IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NO. SUAWSD50147-2001, <br><br> **Plaintiff,** <br><br> vs. <br><br> U-DRIVE ACCEPTANCE CORPORATION, INC., ABQ, INC. and EUGENE SALAZAR, <br><br> **Defendants.** | Case No.: 1:23-cv-00037 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NO. SUAWSD50147-2001 ("Underwriters" or "Plaintiff") by and through their attorneys, Madison, Mroz Steinman, Kenny & Olexy, P.A. (Gregory D. Steinman) and Karbal, Cohen, Economou, Silk & Dunne, LLC, (Rory Dunne and Howard Fishman) and pursuant to 28 U.S.C. §§2201 and 2202, for their Complaint for Declaratory Judgment against Defendant, U-DRIVE ACCEPTANCE CORPORATION ("U-Drive"), ABQ, INC. ("ABQ") and EUGENE SALAZAR ("Salazar"), state as follows:

## NATURE OF THE CASE

1. In this action, Underwriters seek a declaration from this Court that they owe no duty to defend or indemnify U-Drive or ABQ under a claims-made Management Liability Policy No. SUAWSD50147-2001, effective January 29, 2020 to January 29, 2021, with a retroactive date of January 29, 2020 (the "Policy") for a class action lawsuit brought against U-Drive, a sub-prime automobile lending business, concerning U-Drive's allegedly improper notices to its borrowers concerning the disposition of the collateral for such loans.

## THE PARTIES

2.      Plaintiffs, Those Certain Underwriters at Lloyd's, London which subscribe to Policy Number SUAWSD50147-2001 consist of sole member Syndicates MKL 3000[1] and AUL 1274[2] whose corporate members are foreign companies with principal places of business in London, England and are organized under the laws of the United Kingdom.

3.      Defendant, U-Drive Acceptance Corporation, Inc. is an Iowa corporation with its principal place of business located in Sioux City, Iowa.  U-Drive's business is sub-prime automobile lending.

4.      Defendant, ABQ, Inc. is an Iowa corporation with its principal place of business located in Sioux City, Iowa.  ABQ, Inc. is located at the same address as U-Drive and is associated with U-Drive.

5.      U-Drive and/or ABQ do business under the assumed name "Right Way Sales and Leasing".

6.      Defendant Eugene Salazar ("Salazar"), plaintiff in the underlying Salazar Lawsuit giving rise to this action, is a New Mexico citizen residing in Bernalillo, New Mexico.

7.      Underwriters only seek relief with respect to U-Drive and ABQ and no specific relief is sought with respect to Salazar.  Underwriters will dismiss Salazar if he agrees to be bound by the outcome of this matter.

---

[1] Syndicate MKL 3000 is otherwise referred to as Markel Capital Limited and has 70% of the security for the Policy.

[2] Syndicate AUL 1274 is otherwise referred to as Antares Underwriting Ltd. and has 30% of the security for the Policy.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a) because there is complete diversity between Underwriters and Defendants and the amount in controversy exceeds $75,000, exclusive of interest. Specifically, the Policy has a per claim limit of $1 million and the Salazar Lawsuit involves a purported class.

9. Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(1) and (c) because the events leading up to the filing of this coverage action occurred in this District.

10. The Policy was issued effective January 29, 2020 to January 29, 2021, and pursuant to Item 6 in the Declarations, has a retroactive date of January 29, 2020.

## THE UNDERLYING SALAZAR LITIGATION

11. On or about December 7, 2020, Eugene Salazar filed his Class Action Complaint for Damages ("Salazar Complaint") against U-Drive Acceptance Corp, Inc. and ABQ, Inc. as defendants, case No. D-202-CV-2020-06651, filed in the State of New Mexico, County of Bernalillo, Second Judicial District ("Salazar Suit"). (A true and accurate copy of the Salazar Complaint is attached hereto as Exhibit A.) The Salazar Complaint asserts that the defendants do business as "Right Way Sales and Leasing" in Albuquerque, New Mexico. (U-Drive Acceptance Corp, Inc., and ABQ, Inc. are sometimes collectively referred to as "Right Way").

12. The Salazar Complaint alleges that Right Way sells, finances and leases used cars and that the Right Way defendants operate a joint enterprise whose purpose is to sell and finance vehicles through a dealership and shared control over common business activities, shared management and employees, and shared profits and losses.

13. The Salazar Complaint alleges that, on October 7, 2019, Salazar purchased a used vehicle from Right Way and specifically its ABQ Inc. business entity. It is alleged that both sold

3

the vehicle and provided financing. Salazar further alleges that "at some point" the financing contract, along with the security interest, was transferred to Right Way's U-Drive Acceptance Corp, Inc. business entity.

14. The Salazar Complaint further alleges that Salazar lost his job when the pandemic began and was unable to make the car payments and Right Way repossessed the vehicle.

15. The Salazar Complaint further alleges that, on August 24, 2020, Right Way sent Salazar a "Notice of Intent to Sell Repossessed Vehicle" and the Notice was deficient in various respects, including:

   a. Stating that it would sell the vehicle at a private or public auction;

   b. Stating, contradictorily, that the sale would be after September 3, 2020, ten days from September 3, 2020, and on September 4, 2020;

   c. Misidentifying the secured party as FJS, LLC;

   d. Misstating Salazar's right to redeem the vehicle as running to September 4, 2020, whereas it actually ran until the sale; and

   e. Failing to state that Salazar had a right to an accounting of the unpaid indebtedness.

16. Salazar further alleges that Right Way later sold the vehicle and kept the proceeds.

17. The Salazar Complaint alleges that Right Way uses the same standard form notice and uniform practices when it repossesses other customers' vehicles.

18. The Salazar Complaint alleges a putative class of over 100 persons for the period four years prior to the filing of the Salazar Lawsuit, who received form notice or similar notice after having their vehicle repossessed subject to a secured loan with Right Way.

19. The Salazar Complaint states that it is predicated on standard practices of Right Way and involves questions of law or fact that are common to the class, including:

    a. Whether Right Way's standard form Notice violates the New Mexico Uniform Commercial Code ("UCC");

    b. Whether the representations in Right Way's standard form Notice constitute unfair and deceptive practices in violation of New Mexico's Unfair Practices Act ("UPA"); and

    c. Whether Right Way converted property, including vehicles and proceeds from the sale of vehicles.

20. Count I of the Salazar Complaint alleges violation of the UCC and Count II alleges that Right Way willfully engaged in illegal conduct. Count III alleges conversion based on the exercise of dominion and control over property, asserting that such conduct was malicious, willful and fraudulent.

21. The Salazar Complaint seeks actual, statutory and punitive damages.

22. The Salazar Lawsuit involves numerous transactions predating the January 24, 2020 Retroactive Date of the Policy.

23. On or about December 2, 2022, the court in the Salazar Lawsuit granted class certification for "All persons who, starting four years prior to the filing of this lawsuit, received the form Notice or similar notice after having their vehicle repossessed subject to a secured loan with Right Way."

## THE POLICY

24. The Policy was issued effective January 29, 2020 at 12:01 AM to January 29, 2021 at 12:01 AM and has a Retroactive Date of January 29, 2020 ("the Policy"). (A true and correct copy of the Policy with premium information redacted is attached as Exhibit B.)

25. The Policy is subject to the applicable limits of liability and is subject to a per claim retention of $0/$25,000/$25,000 with regard to Insuring Agreements A, B, and C, respectively.

26. The Policy includes the following insuring agreement:

\* \* \*

### DIRECTORS, OFFICERS AND COMPANY LIABILITY COVERAGE PART

**THIS COVERAGE PART IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. DEFENSE COSTS REDUCE AND MAY EXHAUST THE COVERAGE LIMITS, AND ARE SUBJECT TO THE APPLICABLE RETENTION.**

    **I.**    **INSURING AGREEMENTS**

    **A.**    Underwriters shall pay on behalf of the **INSURED PERSONS LOSS** resulting from any **CLAIM** first made against the **INSURED PERSONS** during the **POLICY PERIOD** for a **WRONGFUL ACT** and reported to Underwriters in accordance with Section VI.A. of the Policy, except and to the extent the **COMPANY** is required or permitted to indemnify the **INSURED PERSON(S)** for such **LOSS.**

    **B.**    Underwriters shall pay on behalf of the **COMPANY LOSS** which the **COMPANY** is required or permitted to pay as indemnification to any **INSURED PERSONS** from any **CLAIM** first made against the **INSURED PERSONS** during the **POLICY PERIOD** for a **WRONGFUL ACT** and reported to Underwriters in accordance with Section VI.A. of the Policy.

    **C.**    Underwriters shall pay on behalf of the **COMPANY LOSS** resulting from a **CLAIM** first made against the **COMPANY** during the **POLICY PERIOD** for a **WRONGFUL ACT** and reported to Underwriters in accordance with Section VI. of the Policy.

27. The Policy contains the following general terms and conditions regarding defense and settlement:

> **II.   DEFENSE AND SETTLEMENT**
>
> Subject to Article V.B., Underwriters shall have the right and duty to defend any **CLAIM** against the **INSURED** to which this insurance applies, even if any of the allegations of the **CLAIM** are groundless, false or fraudulent.
>
> Underwriters shall have the right to negotiate the settlement of any **CLAIM**, whether within or above the applicable Retention, but Underwriters shall not commit the **INSURED** to any settlement without the **INSURED'S** consent, such consent not to be unreasonably withheld. The **INSURED** shall not admit liability for or settle any **CLAIM** or incur any **DEFENSE COSTS** without the written consent of Underwriters, such consent not to be unreasonably withheld. If the **INSURED** refuses to consent to any settlement recommended by Underwriters and agreed to by the claimant, and elects to contest any **CLAIM** or continue any legal proceedings in connection with such **CLAIM**, then, subject to the applicable Limit of Liability of this Policy, Underwriters' liability for the **CLAIM** shall be limited to the amount in excess of the applicable Retention for covered **LOSS** which Underwriters would have contributed to the settlement had the **INSURED** consented to such settlement plus the **DEFENSE COSTS** incurred up to the date of such refusal.
>
> *   *   *

28. The Policy contains the following general definitions applicable to all coverage parts:

> **C.** "**COMPANY**" means
>
> 1. the **NAMED INSURED**
> 2. any **SUBSIDIARY** of the **NAMED INSURED**; and
> 3. the **NAMED INSURED OR SUBSIDIARY** as a debtor, a debtor-in-possession or equivalent status.
>
> *   *   *
>
> **F.** "**INTERRELATED WRONGFUL ACTS**" means **WRONGFUL ACTS** that have as a common nexus any fact, circumstance, situation, event or transaction or series of facts, circumstances, situations, events or transactions.
>
> *   *   *

7

     **I.**    "**SUBSIDIARY**" means:

        1.    any entity more than 50% owned by the **COMPANY** at or prior to the Inception Date set forth in Item 2. of the Declarations of the Policy;

        2.    any entity acquired or created subsequent to the Inception Date set forth in Item 2. of the Declarations of the Policy more than 50% owned by the **COMPANY**;

        3.    any not-for-profit organization sponsored exclusively by the **COMPANY** prior to or during the **POLICY PERIOD**.

29.    The Policy contains, in pertinent part, the following provision with respect to **LIMIT OF LIABILITY, RETENTION AND PAYMENT**, applicable to all coverage parts:

\*   \*   \*

     **D.**    **MULTIPLE INSUREDS, CLAIMS OR CLAIMANTS**

     The inclusion herein of more than one **INSURED** or the making of **CLAIM(S)** by more than one person or organization shall not operate to increase Underwriters' Limit of Liability.  **CLAIM(S)** arising out of a single **WRONGFUL ACT**, or **INTERRELATED WRONGFUL ACTS**, shall be treated as a single **CLAIM**, and such single **CLAIM** shall be considered first made:

    1.    when the earliest **CLAIM** within such single **CLAIM** was first made, or

    2.    when notice was first given under any policy of insurance of any **WRONGFUL ACT** or any matter, fact, circumstance, situation, event or transaction that underlies any **CLAIM** within such single **CLAIM**,

    and all such **CLAIM(S)** shall be subject to the same Limit of Liability.

\*   \*   \*

30.    The Policy contains the following definitions for **DIRECTORS, OFFICERS AND COMPANY LIABILITY COVERAGE PART**:

    **II.**    **DEFINITIONS**

    **A.**    "**CLAIM**" means (1) a written demand for monetary or non-monetary relief received by an **INSURED**; and (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief received by an **INSURED** which is commenced by service of suit, or the return of an indictment (in the case of a criminal proceeding), and any appeal from such proceeding.

      **B.**    **"EMPLOYEE"** means:

          1.    any past, present or future full-time, part-time, seasonal or temporary employee of the **COMPANY**, but solely while acting within the scope of their duties as such;

          2.    an **INDEPENDENT CONTRACTOR**, or any person leased to the **COMPANY,** but solely while acting within the scope of their duties as such, and if the **COMPANY** indemnifies the **INDEPENDENT CONTRACTOR** or leased person in the same manner as the **COMPANY'S EMPLOYEES** described in paragraph (1); and

          3.    a volunteer, whose labor and service is engaged and directed by the **COMPANY**, but solely while that person is acting in their capacity as such.

    **C.**    **"INSURED"** means the "**COMPANY**" and any **"INSURED PERSON"**.

    **D.**    **"INSURED PERSON"** means 1) any past, present or future directors, officers, partners, or **EMPLOYEES** of the **COMPANY** while acting within the scope of their duties as such; and 2) the executors, heirs, legal representatives or assigns of each **INSURED** otherwise insured herein in the event of his or her death, incompetency, insolvency or bankruptcy.

    **E.**    **"INDEPENDENT CONTRACTOR"** means any natural person working pursuant to a written contract or agreement between it and the **COMPANY** whose services are designated by the **COMPANY.**

    **F.**    **"LOSS"** means monetary damages, settlements, judgments and statutory attorneys' fees awarded which the **INSURED** is legally obligated to pay in response to a covered **CLAIM**, punitive or exemplary damages or the multiplied portion of a multiplied damages award where insurable under the applicable law, pre-judgment and post-judgment interest on a judgment covered by the terms of this Policy, and **DEFENSE COSTS**. **LOSS** shall not include:

          1.    amounts paid or incurred by the **INSUREDS** to comply with a judgment or settlement for non-monetary or injunctive relief;

          2.    criminal or civil fines or penalties imposed by law;

          3.    taxes;

          4.    matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

    **G.**    **"WRONGFUL ACT"** means any actual or alleged act, error or omission, including misstatement, misleading statement, neglect or breach of duty committed by: (1) an **INSURED PERSON** solely in his or her capacity as such on behalf of the **COMPANY;** or (2) the **COMPANY**.

*   *   *

31. The Policy includes the following exclusions applicable to all insuring clauses:

### III. EXCLUSIONS

**A.** Exclusions Applicable to All Insuring Clauses

This Policy does not apply to **LOSS** in connection with any **CLAIM**:

1. that results in a judgment or final adjudication that an **INSURED** has gained any profit or financial advantage or improper or illegal remuneration to which the **INSURED** is not legally entitled;

2. that results in a judgment or final adjudication that any **INSURED** has committed any criminal, dishonest, intentionally malicious, deliberate, or any willful violation of law or fraudulent act, error or omission.

In determining the applicability of Exclusions 1. and 2., knowledge possessed by the **COMPANY** or any **WRONGFUL ACT** committed by any of the **INSURED PERSONS** shall not be imputed to any other **INSURED PERSON**; provided, however, that knowledge possessed by an **INSURED PERSON** who is a past or current Chairman of the Board, Chief Executive Officer, President or Chief Financial Officer of the **COMPANY** shall be imputed to the **COMPANY**.

3. based upon or directly or indirectly arising out of or resulting from any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease, or death, including but not limited to loss of consortium or services, or any actual or alleged damage to or loss of or destruction of any tangible property, including loss of use thereof; or for libel, slander, oral or written publication of defamatory material or violation of any right of privacy;

\* \* \*

9. based upon or directly or indirectly arising out of or resulting from or in any way involving the rendering of or failure to render professional services;

\* \* \*

12. to the extent that there is coverage under any other existing valid policy or policies, whether such other insurance is stated to be contributory, excess, contingent or otherwise and regardless of whether or not such **LOSS** is collectible or recoverable under such other insurance; provided, however, that this exclusion shall not apply to any **LOSS** in excess of the retention and limit of liability of such other policy or policies where such **CLAIM** is otherwise covered under the terms of this Policy;

\* \* \*

32. The Policy contains the following Retroactive Date Exclusion:

### RETROACTIVE DATE EXCLUSION

To be attached to and form part of Policy Number: **SUAWSD50147-2001**

In favor of: **U-DRIVE ACCEPTANCE CORP**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the following exclusion is added to the Exclusions in Section IV of the General Terms and Provisions of this Policy and applies to all Coverage Parts.

**IV.   EXCLUSIONS**

This Policy shall not apply to **LOSS** in connection with any **CLAIM:**

Involving any **WRONGFUL ACT** committed or alleged to have been committed prior to the Retroactive Date stated in Item 6 of the Declarations.

The effective date of this endorsement is <u>January 29, 2020</u>.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

33. The Policy includes the following general conditions:

**VII.   GENERAL CONDITIONS**

**A**.   **APPLICATION**

By acceptance of this Policy, all **INSUREDS** agree as follows:

1. The particulars and statements contained in the application, a copy of which is attached hereto, and any materials submitted therewith (which are on file with and are deemed attached hereto, as if physically attached hereto) are true and are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy;

2. the statements in the application and in any materials submitted therewith are the **INSUREDS'** representations and shall be deemed material to the acceptance of the risk or the hazard assumed by Underwriters under this Policy and this Policy is issued in reliance upon the truth of such representations;

3. in the event the application, including materials submitted therewith, contains any misrepresentation made with the actual intent to deceive or contains any misrepresentation that materially affects either the acceptance of the risk or the hazard assumed by under this Policy, this Policy shall be void in its entirety and of no effect whatsoever; and

4. this Policy shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual contracts of insurance with each of the **INSUREDS**.

\*   \*   \*

34. The Policy contains the following Exclusion IV.A. under the **DIRECTORS, OFFICERS AND COMPANY LIABILITY COVERAGE PART**:

> **IV.   EXCLUSIONS**
>
> This Policy does not apply to **LOSS** in connection with any **CLAIM**:
>
> **A.**   based upon or directly or indirectly arising out of or resulting from any:
>
> 1. **WRONGFUL ACT** or matter, fact, circumstance, situation, event or transaction that has been the subject of any claim made prior to the inception of this Policy or of any notice given during any prior policy, or was identified as a notice of circumstance in the **APPLICATION**;
>
> 2. **WRONGFUL ACT** which, together with a **WRONGFUL ACT** that has been the subject of any claim or notice identified in (a) above, would constitute **INTERRELATED WRONGFUL ACTS**; or
>
> 3. Matter, fact, circumstance, situation, event or transaction known to an **INSURED** prior to the Coverage Date set forth in Item 7. of the Declarations if such matter, fact or circumstance would cause a reasonable person to believe that a **CLAIM** for a **WRONGFUL ACT** may be made;
>
> \* \* \*

## NOTICE TO UNDERWRITERS OF SALAZAR LAWSUIT AND DEFENSE PURSUANT TO RESERVATION OF RIGHTS

35. On or about March 18, 2021, U-Drive first provided notice to Underwriters of the Salazar Lawsuit that was filed on December 7, 2020 (the "Salazar Notice").

36. On or about April 20, 2021, Underwriters responded to U-Drive's Salazar Notice and advised that Underwriters would agree to defend U-Drive pursuant to the terms of the Policy with respect to the Salazar Lawsuit, pursuant and subject to a reservation of rights, remedies and defenses that may apply.

37. Underwriters' reservation of rights included the right to reimbursement of any and all attorneys' fees and costs incurred on behalf of U-Drive on non-covered matters and

Underwriters' right to cease paying for defense costs on behalf of U-Drive for the Salazar Lawsuit at any time if coverage does not apply.

38. Pursuant to its reservation of rights, Underwriters consented to U-Drive's choice of counsel, Michael Danoff & Associates.

## COUNT I
## DECLARATORY JUDGMENT
## SALAZAR LAWSUIT

39. Underwriters re-allege and re-state paragraphs 1 through 38 above and incorporate said paragraphs herein, as if said allegations were more fully set forth herein.

40. The Salazar Complaint alleges that U-Drive and ABQ violated the Uniform Commercial Code concerning its practices in mailing pre-sale notices and post-sale notices to secured parties, including Salazar.

41. To the extent that ABQ does not meet the Policy definition of **SUBSIDIARY**, it also does not meet the definition of **COMPANY** and is not an insured under the Policy. Therefore, ABQ would not be entitled to any defense or coverage under the Policy.

42. The Policy does not provide coverage in connection with any **CLAIM** "involving any **WRONGFUL ACT** committed or alleged to have been committed prior to the Retroactive Date…" of January 29, 2020.

43. Underwriters owe no duty to indemnity U-Drive or ABQ with respect to the Salazar Lawsuit pursuant to the Retroactive Date Exclusion.

44. The Policy includes the following exclusion:

**IV. EXCLUSIONS**

This Policy does not apply to **LOSS** in connection with any **CLAIM**:

**A.** based upon or directly or indirectly arising out of or resulting from any:

1. **WRONGFUL ACT** or matter, fact, circumstance, situation, event or transaction that has been the subject of any claim made prior to the inception of this Policy or of any notice given during any prior policy, or was identified as a notice of circumstance in the **APPLICATION**;

45. To the extent that the Salazar Complaint falls within exclusion **IV.A.**, coverage is barred.

46. The Salazar Complaint alleges acts of breaches of professional services by U-Drive and ABQ in connection with its pre-sale and post-sale notices, specifically their multiple violations of the UCC.

47. In addition, and alternatively, the Salazar Complaint alleges acts based upon or that directly or indirectly arise out of or results from or in any way involve the rendering or failure to render professional services.

48. Underwriters owe no duty to defend or indemnify U-Drive or ABQ with respect to the Salazar Complaint pursuant to the professional services exclusion, **III.A.9** of the D&O Part.

49. To the extent that the Salazar Complaint seeks the return of any amounts paid to U-Drive or ABQ, such relief does not constitute **LOSS** under the Policy and is not covered.

50. To the extent that the Salazar Complaint seeks injunctive or non-monetary relief, such relief does not constitute **LOSS** under the Policy and is not covered.

51. To the extent that the Salazar Complaint results in an adjudication that U-Drive or ABQ gained any profit or financial advantage or improper or illegal remuneration to which it was not legally entitled, coverage is excluded pursuant to **III.A.1.**

52. To the extent that the Salazar Complaint results in an adjudication that U-Drive or ABQ committed any criminal, dishonest intentionally malicious, deliberate, or any willful violation of law or fraudulent act, error or omission, coverage is excluded pursuant to **III.A.2.** of the D&O Part.

53. To the extent that the Salazar Complaint alleges wanton, outrageous, and malicious acts, coverage is excluded pursuant to Section **III.A.3.** of the D&O Part.

54. To the extent that U-Drive did not provide timely notice of the Salazar Complaint to Underwriters, it did not comply with the notice requirement of Section **VI.A .**of the General Terms and no coverage is provided.

55. The Policy requires that U-Drive pay the applicable Retention specified in the Policy, which also applies to **DEFENSE COSTS** before Underwriters shall incur any liability to pay for any **LOSS**. Payment of **DEFENSE COSTS** by Underwriters will reduce, and may exhaust, the Limit of Liability under the Policy.

WHEREFORE, Plaintiffs, THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NO. SUAWSD50147-2001 ("Underwriters"), pray that this Honorable Court enter judgment in favor of Underwriters, and against Defendants, U-Drive Acceptance Corporation ("U-Drive") and ABQ, Inc. ("ABQ") some or all doing business as Right Way Sales and Leasing, granting the following relief:

A. Declaring that Underwriters owe no duty or obligation to defend or reimburse defense fees and expenditures, to U-Drive or ABQ under the Policy with respect to the Salazar Lawsuit and in particular defense of the Class Action Complaint for Damages, including any and all class members, and can therefore withdraw from the defense;

B. Declaring that Underwriters owe no duty or obligation to indemnify U-Drive or ABQ under the Policy with respect to any judgment or settlement in the Salazar Lawsuit and in particular with respect to the Class Action Complaint for Damages, including any and all class members;

C. Declaring that U-Drive must reimburse Underwriters for all defense fees, costs and other expenditures in excess of the U-Drive Retention incurred by Underwriters with respect to the Salazar Lawsuit and in particular with respect to the Class Action Complaint for Damages, including any and all class members; and

D. For such other relief that the Court deems just and proper.

Dated: January 11, 2023

        Respectfully submitted,

        MADISON, MROZ, STEINMAN,
        KENNY & OLEXY, P.A.

        By:*/s/ Gregory D. Steinman*
           Gregory D. Steinman
           P.O. Box 25467
           Albuquerque, New Mexico, 87125-5467
           (505) 242-2177
           gds@madisonlaw.com

        and

>Roderick T. Dunne (admission pending)
>Howard J. Fishman (admission pending)
>KARBAL, COHEN, ECONOMOU,
>SILK & DUNNE, LLC
>200 South Wacker Drive, Suite 2550
>Chicago, Illinois 60606
> (312) 431-3700
>rdunne@karballaw.com
>hfishman@karballaw.com
>
>*Attorneys for Plaintiff Those Certain Underwrites at Lloyd's, London, Subscribing to Certificate No. SUAWSD50147-2001*