# EXHIBIT A

**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**12/7/2020 4:52 PM**
**CLERK OF THE COURT**
**Patricia Serna**

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

EUGENE SALAZAR,

     Plaintiff,

v.                              No.     D-202-CV-2020-06651

ABQ, INC.,
FJS, LLC, and
U DRIVE ACCEPTANCE CORP, INC.,
d/b/a RIGHT WAY SALES AND LEASING,

     Defendants.

## CLASS ACTION COMPLAINT FOR DAMAGES

### Introduction

1. Defendants, a group of related companies running a used car dealership in Albuquerque, New Mexico, violated state law by misrepresenting the rights of consumers after their vehicles were repossessed.

2. Plaintiff brings claims on his own behalf and on behalf of a class of similar situated persons for violations of the New Mexico Uniform Commercial Code ("UCC"), NMSA § 55-1-101 *et seq.*, the New Mexico Unfair Practices Act ("UPA"), NMSA § 57-12-1 *et seq.*, and for conversion.

### Parties

3. Plaintiff Eugene Salazar lives in Bernalillo, New Mexico.

4. Defendant ABQ, Inc., is an Iowa corporation doing business as Right Way Sales and Leasing in Albuquerque, New Mexico.

5. Defendant FJS, LLC, is an Iowa limited liability company doing business as Right Way Sales and Leasing in Albuquerque, New Mexico.

6.   Defendant U Drive Acceptance Corp., Inc., is an Iowa corporation doing business as Right Way Sales and Leasing in Albuquerque, New Mexico.

7.   In this Complaint, Plaintiff refers to ABQ, Inc., FJS, LLC, and U Drive Acceptance Corp., Inc. collectively as "Right Way."

8.   Right Way sells, finances, and leases used cars.

9.   Right Way Defendants operate a joint venture or enterprise whose activities included the transactions with Eugene Salazar and class members, including, without limitation:

   a.   They shared a community of interest with the object or purpose of selling and financing vehicles through the Right Way dealership;

   b.   They shared control over common business activities;

   c.   They shared management and employees; and

   d.   They shared profits and losses.

10.  Right Way Defendants also acted as one another's agents, apparent agents, or contractors, and were acting within the scope of their agency, apparent agency, or contract when engaging in the conduct described herein.  Defendants are vicariously liable for the actions of their agents, apparent agents, or contractors.

**The UCC Provides Straightforward Rules for Repossessing Collateral**

11.  Generally, aggrieved parties must seek a ruling in Court before taking another person's property to address a perceived wrong, such as an unpaid debt.

12.  The Uniform Commercial Code ("UCC") creates a limited exception by allowing secured creditors to engage in "self-help repossession" without a Court's involvement.  NMSA § 55-9-609.

13.     Because self-help repossession takes place outside of the supervision of the Court, the secured creditor must strictly comply with the UCC's requirements.

14.     For example, the UCC requires that the secured creditor provide specific notice to the consumer after repossessing the collateral but before selling the collateral. NMSA §§ 55-9-613 and -614; *First Nat. Bank of Belen v. Jiron*, 1987-NMSC-085, ¶¶ 5-6, 106 N.M. 261.

15.     The notice protects the rights of the consumer. *States Res. Corp. v. Gregory*, 339 S.W.3d 591, 596 (Mo. Ct. App. 2011) ("The purpose of statutory notice is to apprise a debtor of the details of a sale so that the debtor may take whatever action he deems necessary to protect his interest. Proper notice provides the debtor the opportunity to: (1) discharge the debt and reclaim the collateral, (2) find another purchaser, or (3) verify that the sale is conducted in a commercially reasonable manner") (internal quotation marks and citations omitted).

16.     Compliance with the UCC's notice requirements is easy; NMSA § 55-9-614 contains a fill-in-the-blanks form.

**Right Way Repossesses Mr. Salazar's Car and Breaks the UCC's Rules**

17.     On October 7, 2019, Mr. Salazar purchased a used 2011 Chrysler 200 ("the Vehicle") from Right Way.

18.     Right Way financed the purchase and took a security interest in the Vehicle.

19.     Mr. Salazar agreed to make semi-monthly payments of $185.02.

20.     Right Way's ABQ Inc. business entity both sold the Vehicle and provided financing.

21.     At some point, the financing contract, along with the security interest, was transferred to Right Way's U Drive Acceptance Corp, Inc. business entity.

3

22.   Like many of Right Way's cars, the Vehicle was of poor quality and was plagued with mechanical issues.

23.   When the COVID-19 pandemic began, Mr. Salazar lost his job.

24.   Mr. Salazar made arrangements with Right Way to make lower payments.

25.   Eventually, Right Way demanded more money than Mr. Salazar was able to pay.

26.   When Mr. Salazar did not pay, Right Way repossessed the Vehicle.

27.   On or about August 24, 2020, Right Way sent Mr. Salazar the Notice of Intent to Sell Repossessed Motor Vehicle ("the Notice") attached to this Complaint as Exhibit 1.

28.   Right Way did not send Mr. Salazar any other notice after repossessing the Vehicle.

29.   The Notice was deficient in numerous ways:

   a.   Rather than stating whether the sale would be public or private as required by NMSA § 55-9-613(1)(C), the Notice stated that "[w]e will sell the Vehicle at private **or** public auction" (emphasis added).

   b.   The Notice contained contradictory information about the date of sale, stating that the sale would be "**after** 9/3/20" (emphasis added), that it would be "10 days from the date of this Notice [9/3/20]" and that it would be on "9/4/20." This violated NMSA § 55-9-613(1)(E).

   c.   In reality, the Vehicle was not sold until after these contradictory dates, further violating NMSA § 55-9-613(1)(E).

   d.   The Notice misidentified the secured party as FJS, LLC, contrary to NMSA § 55-9-613(1)(A).

e.  The Notice misstated the consumer's right to redeem the Vehicle at any time up to sale, NMSA § 55-9-623, stating instead that the consumer could only get the Vehicle back until "9/4/20."

f.  The Notice failed to state that the consumer was entitled to an accounting of the unpaid indebtedness and state the charge, if any, for an accounting.  NMSA § 55-9-613(1)(D).

30.  Right Way later sold the Vehicle and kept the proceeds of sale.

31.  Mr. Salazar was damaged by Right Way's conduct, specifically through the loss of possession and use of his Vehicle and loss of his equity in the Vehicle.

32.  Right Way uses the same standard form Notice and uniform practices when it repossesses the vehicles of other customers.

33.  Class members suffered the same damages as Mr. Salazar.

### Class Allegations

34.  Plaintiff Eugene Salazar is the representative of a class of persons who, starting four years prior to the filing of this lawsuit, received the form Notice or similar notice after having their vehicle repossessed subject to a secured loan with Right Way.

35.  The class is so numerous that joinder of all members is impracticable.  Plaintiff believes the number of members of the class exceeds 100 persons.

36.  This action is predicated on standard practices of Right Way, which enters into a substantial number of secured loans that end in repossessions.

37.  This case involves questions of law or fact common to the class, which Plaintiff has recited in detail throughout this Complaint.  These questions predominate over any questions affecting only individual class members. The common questions include:

    a. Whether Right Way's standard form Notice violates the UCC;

    b. Whether the representations in Right Way's standard form Notice constitute unfair and deceptive practices or unconscionable practices in violation of the UPA; and

    c. Whether Right Way converted property belonging to class members, including vehicles and proceeds from the sale of vehicles.

38. Plaintiff's claims are typical of those of the class members. All claims are based on the same factual and legal theories. All claims arise from the same form documents and uniform business practices.

39. Plaintiff will fairly and adequately represent the class. Plaintiff is committed to litigating this matter. He has retained counsel experienced in handling class claims and claims involving unlawful business practices. Neither Plaintiff nor counsel have any interests which might cause them not to pursue this claim vigorously

40. A class action is superior for the fair and efficient adjudication of the class members' claims. Class members are unaware of the fact that their rights have been violated. Right Way's customers cannot generally afford counsel to engage in individual litigation against Right Way. A failure of justice will result in the absence of a class action.

### First Claim for Relief: Violations of the UCC

41. Each transaction in which Right Way provided faulty notification before disposition of collateral to a class member and failed to comply with the UCC's requirements for the commercially reasonable disposition of collateral, violated the UCC.

42. Plaintiff and each member of the class are entitled to the greater of actual or statutory damages for each transaction in which Right Way violated the UCC. NMSA § 55-9-625(c)(2).

### Second Claim for Relief: Violations of the Unfair Practices Act

43. Each transaction in which Right Way repossessed a class member's vehicle and sent the class member its misleading form Notice constituted an unfair and deceptive practice and an unconscionable practice. NMSA § 57-12-2.

44. Right Way willfully engaged in the illegal conduct alleged.

45. Plaintiff and each member of the class are entitled to actual damages for each unfair or deceptive act and each unconscionable act, plus costs and attorney fees. NMSA § 57-12-10.

46. Plaintiff and each member of the class are entitled to injunctive relief barring Right Way from continuing to make misrepresentations about consumers' rights under the UCC and from taking further action with respect to their vehicles.

### Third Claim for Relief: Conversion

47. Right Way exercised dominion or control over property, including vehicles and proceeds from the sale of vehicles, that belonged to Mr. Salazar and the other members of the class, in defiance of their ownership rights, and made unauthorized and injurious use of that property.

48. Defendants' conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith.

49. Plaintiff and each member of the class are entitled to actual and punitive damages.

## Prayer for Relief

WHEREFORE, Mr. Salazar prays that this Court:

    A.    Certify this case as a class action and appoint counsel below to represent the class;

    B.    Award actual, statutory, and punitive damages as set forth above;

    C.    Award injunctive relief;

    F.    Award reasonable attorney fees and costs; and

    G.    Grant such further relief that is just and reasonable under the circumstances.

Respectfully submitted,

*/s/Nicholas H. Mattison*
Nicholas H. Mattison
Richard N. Feferman
Feferman, Warren & Mattison, Attorneys for Plaintiff
300 Central Ave., SW, Suite 2000 West
Albuquerque, New Mexico 87102
(505) 243-7773
(505) 243-6663 (fax)

8