# EXHIBIT B



# Lloyd's Certificate

**This Insurance** is effected with certain Underwriters at Lloyd's, London.

**This Certificate** is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

**The Assured** is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

All inquiries regarding this Certificate should be addressed to the following Correspondent:

Stateside Underwriting Agency
A division of Johnson & Johnson, Inc.
335 Commerce Drive
Crystal Lake, Illinois 60014

## CERTIFICATE PROVISIONS

1. **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

2. **Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Underwriters at Lloyd's, London whose syndicate numbers can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

3. **Cancellation.** If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. **Service of Suit.** It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm or person named in item 6 of the attached Declaration Page, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

   The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

   Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

5. **Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

6. **Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

7. **Short Rate Cancellation.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

### Short Rate Cancellation Table For Term of One Year.

| Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 6 | 70 - 73 | 30 | 157 - 160 | 54 | 261 - 264 | 78 |
| 3 - 4 | 7 | 74 - 76 | 31 | 161 - 164 | 55 | 265 - 269 | 79 |
| 5 - 6 | 8 | 77 - 80 | 32 | 165 - 167 | 56 | 270 - 273 ( 9 mos ) | 80 |
| 7 - 8 | 9 | 81 - 83 | 33 | 168 - 171 | 57 | 274 - 278 | 81 |
| 9 - 10 | 10 | 84 - 87 | 34 | 172 - 175 | 58 | 279 - 282 | 82 |
| 11 - 12 | 11 | 88 - 91 ( 3 mos ) | 35 | 176 - 178 | 59 | 283 - 287 | 83 |
| 13 - 14 | 12 | 92 - 94 | 36 | 179 - 182 ( 6 mos ) | 60 | 288 - 291 | 84 |
| 15 - 16 | 13 | 95 - 98 | 37 | 183 - 187 | 61 | 292 - 296 | 85 |
| 17 - 18 | 14 | 99 - 102 | 38 | 188 - 191 | 62 | 297 - 301 | 86 |
| 19 - 20 | 15 | 103 - 105 | 39 | 192 - 196 | 63 | 302 - 305 ( 10 mos ) | 87 |
| 21 - 22 | 16 | 106 - 109 | 40 | 197 - 200 | 64 | 306 - 310 | 88 |
| 23 - 25 | 17 | 110 - 113 | 41 | 201 - 205 | 65 | 311 - 314 | 89 |
| 26 - 29 | 18 | 114 - 116 | 42 | 206 - 209 | 66 | 315 - 319 | 90 |
| 30 - 32 ( 1 mos ) | 19 | 117 - 120 | 43 | 210 - 214 ( 7 mos ) | 67 | 320 - 323 | 91 |
| 33 - 36 | 20 | 121 - 124 ( 4 mos ) | 44 | 215 - 218 | 68 | 324 - 328 | 92 |
| 37 - 40 | 21 | 125 - 127 | 45 | 219 - 223 | 69 | 329 - 332 | 93 |
| 41 - 43 | 22 | 128 - 131 | 46 | 224 - 228 | 70 | 333 - 337 ( 11 mos ) | 94 |
| 44 - 47 | 23 | 132 - 135 | 47 | 229 - 232 | 71 | 338 - 342 | 95 |
| 48 - 51 | 24 | 136 - 138 | 48 | 233 - 237 | 72 | 343 - 346 | 96 |
| 52 - 54 | 25 | 139 - 142 | 49 | 238 - 241 | 73 | 347 - 351 | 97 |
| 55 - 58 | 26 | 143 - 146 | 50 | 242 - 246 ( 8 mos ) | 74 | 352 - 355 | 98 |
| 59 - 62 ( 2 mos ) | 27 | 147 - 149 | 51 | 247 - 250 | 75 | 356 - 360 | 99 |
| 63 - 65 | 28 | 150 - 153 ( 5 mos ) | 52 | 251 - 255 | 76 | 361 - 365 ( 12 mos ) | 100 |

Rules applicable to insurance with terms less than or more than one year:

A.   If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B.   If insurance has been in force for more than one year:
   1.   Determine full annual premium as for insurance written for a term of one year.
   2.   Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.
   3.   Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.



One Lime Street London EC3M 7HA

This Declaration Page is attached to and forms part of Certificate provisions (Form SLC-3 USA NMA 2868)

| Previous No.<br>**NONE** | Authority Ref. No.<br>B0621PFDO19219 | Certificate No.<br>**SUAWSD50147-2001** |
|---|---|---|

1. Name and address of the Insured:

   **U-DRIVE ACCEPTANCE CORP**
   **1119 4TH ST STE 102**
   **SIOUX CITY, IA 51101**

2. Effective from     January 29, 2020          to          January 29, 2021
   both days at 12:01 a.m. standard time.

3. Insurance is effective with certain **UNDERWRITERS AT LLOYD'S, LONDON.**

| 4. Amount | Coverage | Rate | Premium |
|---|---|---|---|
| $1,000,000<br>(See Policy for any<br>applicable sub-limits) | Management Liability Insurance | | |
| | | POLICY FEE | ▮ |
| | | GROSS TOTAL | ▮ |

5. Forms attached hereto and special conditions:

   J1-WS, J2, J6, J7, J8, J9, J10, J13, J14, J15, J18, J87

6. Service of Suit may be made upon:

   Mr. John K. Silk; Karbal, Cohen, Economou, Silk & Dunne, LLC 150 South Wacker Drive, 17th Floor, Chicago, IL 60606

7. In the event of a claim, please notify the following:

   Mr. John K. Silk

   Karbal, Cohen, Economou, Silk & Dunne, LLC 150 South Wacker Drive 17th Floor Chicago, IL 60606

Dated                                                                    Stateside Underwriting Agency, A Division of Johnson & Johnson Inc.

_____February 20, 2020_____                                          By_____
                                                                              Correspondent

This policy is issued, pursuant to Iowa Code section 515.120, by a non-admitted company in Iowa and as such is not
covered by the Iowa Insurance Guaranty Association

## MANAGEMENT LIABILITY INSURANCE

**THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. DEFENSE COSTS REDUCE AND MAY EXHAUST THE COVERAGE LIMITS, AND ARE SUBJECT TO THE RETENTION.**

**POLICY NUMBER:  SUAWSD50147-2001**

## UNDERWRITERS AT LLOYD'S, LONDON

**DECLARATIONS**

**Item 1.**    Name and Address of Insured:

**U-DRIVE ACCEPTANCE CORP**
**1119 4TH ST STE 102**
**SIOUX CITY, IA  51101**

**Item 2.**    Policy Period   (Month   Day   Year)
From:  January 29, 2020                    To:  January 29, 2021
12:01 A.M. Local Time at the Address of the Organization as stated in Item 1 above.

**Item 3.**

| | |
|---|---|
| $1,000,000 | Aggregate Limit of Liability for each Policy Period (Inclusive of Defense Costs) |
| $1,000,000 | Aggregate Limit for Directors, Officers and Company Liability |
| NOT COVERED | Sublimit of Liability for Insuring Agreement D Only |
| NOT COVERED | Aggregate Limit for Employment Practices Liability |

**Item 4.**    Retention

| | |
|---|---|
| Nil | Directors, Officers and Company Liability, Insuring Agreement A |
| $25,000 | Directors, Officers and Company Liability, Insuring Agreement B |
| $25,000 | Directors, Officers and Company Liability, Insuring Agreement C |
| NOT COVERED | Directors, Officers and Company Liability, Insuring Agreement D |
| NOT COVERED | Employment Practices Liability |

**Item 5.**    The Premium for this Policy is:

**Item 6.**    Retroactive Date:  January 29, 2020

**Item 7.**        Coverage Date: **January 29, 2020**

**Item 8.**        Notice Pursuant to Article VI.:

Mr. John K. Silk; Karbal, Cohen, Economou,
Silk & Dunne, LLC

150 South Wacker Drive,
17th Floor,
Chicago,  60606

**Item 9.**        Endorsements Attached at Issuance:

J1-WS, J2, J6, J7, J8, J9, J10, J13, J14, J15, J18, J87

Authorized Representative:_____          February 20, 2020
                                              Signature                                                              Date

## MANAGEMENT LIABILITY INSURANCE

In consideration of the payment of the premium, reliance by Underwriters upon the statements made to Underwriters in the **APPLICATION** attached hereto and made a part hereof, and subject to the terms, conditions, definitions, exclusions and limitations hereinafter provided, Underwriters agree with the **INSURED** as follows:

## GENERAL TERMS AND PROVISIONS

### I.    APPLICABILITY OF GENERAL PROVISIONS

    **A.**    Except as designated otherwise, the **GENERAL TERMS AND PROVISIONS** apply to all **COVERAGE PARTS.**

    **B.**    Except as designated otherwise, the terms and provisions of each **COVERAGE PART** apply only to that **COVERAGE PART**.

    **C.**    If there is a conflict between the **GENERAL TERMS AND PROVISIONS** and any **COVERAGE PART**, the provisions of the **COVERAGE PART** shall control.

### II.    DEFENSE AND SETTLEMENT

Subject to Article V.B., Underwriters shall have the right and duty to defend any **CLAIM** against the **INSURED** to which this insurance applies, even if any of the allegations of the **CLAIM** are groundless, false or fraudulent.

Underwriters shall have the right to negotiate the settlement of any **CLAIM,** whether within or above the applicable Retention, but Underwriters shall not commit the **INSURED** to any settlement without the **INSURED'S** consent, such consent not to be unreasonably withheld. The **INSURED** shall not admit liability for or settle any **CLAIM** or incur any **DEFENSE COSTS** without the written consent of Underwriters, such consent not to be unreasonably withheld. If the **INSURED** refuses to consent to any settlement recommended by Underwriters and agreed to by the claimant, and elects to

contest any **CLAIM** or continue any legal proceedings in connection with such **CLAIM,** then, subject to the applicable Limit of Liability of this Policy, Underwriters' liability for the **CLAIM** shall be limited to the amount in excess of the applicable Retention for covered **LOSS** which Underwriters would have contributed to the settlement had the **INSURED** consented to such settlement plus the **DEFENSE COSTS** incurred up to the date of such refusal.

## III.  DEFINITIONS

A.     **"ACT OF TERRORISM"** means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s) committed for political, religious, ideological, or similar purposes, including the intention to influence any government and/or to put the public, or any section of the public, in fear.

B.     **"APPLICATION"** means the application for this Policy, including any materials submitted therewith, and any other policy of which this Policy is a renewal, replacement or which it succeeds in time.

C.     **"COMPANY"** means:

1.     the **NAMED INSURED**;

2.     any **SUBSIDIARY** of the **NAMED INSURED**; and

3.     the **NAMED INSURED OR SUBSIDIARY** as a debtor, a debtor-in-possession or equivalent status.

D.     **"CRIMINAL CONDUCT"** means conduct which constitutes (or would constitute) an offence in any part of the world.

E.     **"DEFENSE COSTS"** means reasonable and necessary fees and expenses incurred with the approval of Underwriters in connection with the investigation, adjustment,

settlement, defense or appeal of a **CLAIM** made against an **INSURED** for a **WRONGFUL ACT,** and shall include the cost of attachment or similar bonds. Payment of **DEFENSE COSTS** by Underwriters shall reduce, and may exhaust, the Limit of Liability under this Policy.

**"DEFENSE COSTS"** shall not include: (a) amounts incurred by any **INSURED** prior to the date the **CLAIM** is first made and reported to Underwriters; and (b) salaries, wages, fees, overhead, overtime or benefit expenses incurred by or associated with the **INSUREDS.**

    **F.**    **"INTERRELATED WRONGFUL ACTS"** means **WRONGFUL ACTS** that have as a common nexus any fact, circumstance, situation, event or transaction or series of facts, circumstances, situations, events or transactions.

    **G.**    **"NAMED INSURED"** means the partnership, corporation or other entity named in Item 1. of the Declarations.

    **H.**    **"POLICY PERIOD"** means the period from the Inception Date of this Policy to the Expiration Date stated in Item 2. of the Declarations, or to any earlier cancellation date of this Policy.

    **I.**    **"SUBSIDIARY"** means:

        1.    any entity more than 50% owned by the **COMPANY** at or prior to the Inception Date set forth in Item 2. of the Declarations of the Policy;

        2.    any entity acquired or created subsequent to the Inception Date set forth in Item 2. of the Declarations of the Policy more than 50% owned by the **COMPANY**;

        3.    any not-for-profit organization sponsored exclusively by the **COMPANY** prior to or during the **POLICY PERIOD**.

## IV.   EXCLUSIONS

This Policy does not apply to **LOSS** in connection with any **CLAIM**:

    **A.**    based upon or directly or indirectly arising out of or resulting from any:

        1.    **WRONGFUL ACT** or matter, fact, circumstance, situation, event or transaction that has been the subject of any claim made prior to the inception of this Policy or of any notice given during any prior policy, or was identified as a notice of circumstance in the **APPLICATION**;

        2.    **WRONGFUL ACT** which, together with a **WRONGFUL ACT** that has been the subject of any claim or notice identified in (a) above, would constitute **INTERRELATED WRONGFUL ACTS**; or

        3.    Matter, fact, circumstance, situation, event or transaction known to an **INSURED** prior to the Coverage Date set forth in Item 7. of the Declarations if such matter, fact or circumstance would cause a reasonable person to believe that a **CLAIM** for a **WRONGFUL ACT** may be made;

    **B.**    for any of the following, regardless of any other cause or event contributing concurrently or otherwise to the loss:

        1.    war, invasion, acts of foreign enemies, hostilities, or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

        2.    any **ACT OF TERRORISM**;

This exclusion applies to all **LOSS** based upon, directly or indirectly arising out of or resulting from any action taken in controlling, preventing, suppressing or in any way relating to (1) or (2), above;

    **C.**    for any actual or alleged:

        (a)    electronic or software failure; or

        (b)    failure, breakdown or malfunction of any machine or system of machines.

## V.    LIMIT OF LIABILITY, RETENTION AND PAYMENT

### A.    LIMIT OF LIABILITY

The Policy's Aggregate Limit of Liability stated in Item 3. of the Declarations shall be the maximum aggregate Limit of Liability of Underwriters for all **LOSS** under all Coverage Parts combined, arising out of any and all **CLAIMS** first made against the **INSUREDS** during the **POLICY PERIOD**, and Extended Reporting Period, if applicable, including **DEFENSE COSTS**, reported in accordance with the terms and conditions of the Policy, regardless of the number of **CLAIMS** made against the **INSUREDS** or the time when **LOSS** payments are made by Underwriters.

### B.    RETENTION

1.    As a condition precedent to coverage under the Policy, and subject to the Limit of Liability, Underwriters shall only be liable for **LOSS** in excess of the applicable Retention stated in Item 4. of the Declarations. The applicable Retention shall apply to each **CLAIM** made against the **INSUREDS** and shall apply only to **LOSS** otherwise covered under the Policy. The Retention shall be borne by the **INSURED** as its own uninsured risk and shall be fully paid by the **INSURED** before Underwriters shall incur any liability to pay any **LOSS**. The Retention applies to **DEFENSE COSTS**, whether or not any other **LOSS** is paid.

2.    The Retention applicable to Insuring Clause I.B., for the Directors, Officers and Company Liability Part, shall apply to **LOSS** resulting from any **CLAIM** if indemnification for the **CLAIM** by the **COMPANY** is required or permitted by law, to the fullest extent so required or permitted, regardless of whether or not such actual

indemnification by the **COMPANY** is made, except and to the extent such indemnification is not made by the **COMPANY** solely by reason of the **COMPANY'S** insolvency.

3.      In the event a **CLAIM** implicates more than one Insuring Agreement under the Directors, Officers and Company Liability Coverage Part, then the largest Retention amount stated in Item 4. of the Declarations shall apply toward any **LOSS** arising from the **CLAIM**.

4.      In the event a **CLAIM** implicates more than one Coverage Part, the applicable Retention(s) shall be applied separately to each part of the **LOSS** arising from the **CLAIM**, but the sum of the Retention amounts shall not exceed the largest single Retention amount set forth in Item 4. of the Declarations.

## C.      EXHAUSTION OF LIMIT

1.      Underwriters shall not be obligated to pay any **LOSS,** including **DEFENSE COSTS,** or defend any **CLAIM** after the Policy's Aggregate Limit of Liability as stated in Item 3. of the Declarations has been exhausted by payment of **LOSS**. **DEFENSE COSTS** shall be part of, and not in addition to, the Aggregate Limit of Liability and payment of **DEFENSE COSTS** by Underwriters will reduce, and may exhaust, the Policy's Aggregate Limit of Liability.

2.      Notwithstanding C.1., Underwriters shall not be obligated to pay any **LOSS**, including **DEFENSE COSTS**, or defend any **CLAIM** after the available Limit of Liability for each Coverage Part as stated in Item 3. of the Declarations has been exhausted by payment of **LOSS**, including **DEFENSE COSTS. DEFENSE COSTS** shall be part of and not in addition to the Limit of Liability for each Coverage Part and payment of **DEFENSE COSTS** by Underwriters will reduce the respective Limit of Liability for each Coverage Part.

## D.      MULTIPLE INSUREDS, CLAIMS OR CLAIMANTS

The inclusion herein of more than one **INSURED** or the making of **CLAIM(S)** by more than one person or organization shall not operate to increase Underwriters' Limit of Liability. **CLAIM(S)** arising out of a single **WRONGFUL ACT**, or **INTERRELATED**

**WRONGFUL ACTS**, shall be treated as a single **CLAIM**, and such single **CLAIM** shall be considered first made:

     1.     when the earliest **CLAIM** within such single **CLAIM** was first made, or

     2.     when notice was first given under any policy of insurance of any **WRONGFUL ACT** or any matter, fact, circumstance, situation, event or transaction that underlies any **CLAIM** within such single **CLAIM**,

     and all such **CLAIM(S)** shall be subject to the same Limit of Liability.

     **E.**     **PAYMENT UNDER COVERAGE PARTS**

     If **LOSS** is covered under more than one Coverage Part:

     1.     Underwriters shall first pay **LOSS** under the Directors, Officers and Company Liability Coverage Part, prior to paying such **LOSS** under the Employment Practices Liability Coverage Part;

     2.     Underwriters are obligated to pay **LOSS** only once;

     3.     Underwriters shall have the right to determine which Coverage Part applies, if any, regardless of under which Coverage Part notice has been given.

## VI.    NOTICE AND LOSS PROVISIONS

**A.**    As a condition precedent to the availability of the rights provided under this Policy, the **INSURED** shall give written notice to Underwriters of any **CLAIM** made against the **INSURED** as soon as practicable, but in no event later than sixty (60) days after the date such **CLAIM** is first made.

**B.**    If during the **POLICY PERIOD** or the Extended Reporting Period, if applicable, the **INSURED** shall first become aware of a specific **WRONGFUL ACT**, and during such period gives written notice to Underwriters as soon as practicable of:

1.    the specific **WRONGFUL ACT** and the identities of the potential claimants;

2.    the injury or damage which has or may result from such specific **WRONGFUL ACT**; and

3.    the circumstances by which the **INSURED** first became aware of the specific **WRONGFUL ACT**

then any **CLAIM** which is subsequently made against the **INSURED** arising out of such **WRONGFUL ACT** shall, for the purposes of this Policy, be deemed to have been made when such written notice was first given.

**C.**    The notifications provided for above shall be made to the party set forth in Item 8. of the Declarations.

## VII.    GENERAL CONDITIONS

### A.    APPLICATION

By acceptance of this Policy, all **INSUREDS** agree as follows:

1.    The particulars and statements contained in the application, a copy of which is attached hereto, and any materials submitted therewith (which are on file with and are deemed attached hereto, as if physically

attached hereto) are true and are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy;

2.      the statements in the application and in any materials submitted therewith are the **INSUREDS'** representations and shall be deemed material to the acceptance of the risk or the hazard assumed by Underwriters under this Policy and this Policy is issued in reliance upon the truth of such representations;

3.      in the event the application, including materials submitted therewith, contains any misrepresentation made with the actual intent to deceive or contains any misrepresentation that materially affects either the acceptance of the risk or the hazard assumed by under this Policy, this Policy shall be void in its entirety and of no effect whatsoever; and

4.      this Policy shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual contracts of insurance with each of the **INSUREDS**.

## B.      EXTENDED REPORTING PERIOD

If Underwriters cancel this Policy other than for non-payment of premium or do not renew this Policy, the **INSURED** shall have the right, upon payment of an additional premium of 100% of the total policy premium hereunder to an extension of the insurance provided by this Policy with respect to any **CLAIM** first made against the **INSURED** during the period of twelve (12) months after the effective date of such cancellation or non-renewal, but only with respect to any **WRONGFUL ACT** committed before the effective date of such cancellation or non-renewal and otherwise insured under this Policy.

The right to such an extension shall terminate unless written notice is received by Underwriters from the **INSURED** within thirty (30) days after the effective date of such cancellation or non-renewal with full payment of premium for the Extended Reporting

Period, as well as payment of any premium and/or Retention amounts due to Underwriters. If such written notice and payment are not received by Underwriters as aforesaid, the **INSURED** shall not have the right to such an extension.

An increase in premium, a change in the Limits of Liability, or a change in the terms and conditions of the Policy shall not constitute a nonrenewal of this Policy. Once purchased, an Extended Reporting Period may not be cancelled by either the **INSUREDS** or Underwriters; however, the Extended Reporting Period shall automatically terminate if the **INSUREDS** purchase other insurance that provides substantially the same coverage as this Policy or would so provide except for the exhaustion of its limits of liability. If the Extended Reporting Period is automatically terminated as set forth above, all of the premium shall be fully earned at the time of payment.

The Limit of Liability provided during the Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability provided during the **POLICY PERIOD,** as stated in Item 3. of the Declarations. All other terms and conditions of this Policy shall apply to any **CLAIM** made during the Extended Reporting Period.

### C.    CANCELLATION

This Policy may be cancelled by the **NAMED INSURED** by mailing or delivering prior written notice thereof to Underwriters or by surrender of this Policy to Underwriters at its address stated in the Declarations. This Policy may also be cancelled by or on behalf of Underwriters by mailing to the **NAMED INSURED** by registered, certified, or other first class mail, at the **NAMED INSURED'S** address stated in Item 1. of the Declarations, written notice stating when, not less than sixty (60) days thereafter, the cancellation shall be effective. However, Underwriters may cancel this Policy for non-payment of premium due on ten (10) days' written notice thereof to the **NAMED INSURED.** The mailing of such notice as aforesaid shall be sufficient proof of the giving of such notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **POLICY PERIOD.** If this Policy shall be cancelled by the **NAMED INSURED,** Underwriters shall

retain the customary short rate proportion of the premium hereon. If this Policy shall be cancelled by Underwriters, Underwriters shall retain the pro rata proportion of the premium hereon. Payment or tender of any unearned premium by Underwriters shall not be a condition precedent to the effectiveness of cancellation by Underwriters, but such payment shall be made as soon as practicable.

## D.    SUBROGATION

In the event of any payment under this Policy, Underwriters shall be subrogated to all the **INSURED'S** rights of recovery therefor against any person or organization, and the **INSURED** shall execute and deliver all instruments and papers and do whatever else is necessary to secure such rights. Any amount recovered in excess of Underwriters' total payment shall be paid to the **INSURED,** less the cost to Underwriters of such recovery.

## E.    ASSISTANCE AND COOPERATION

The **INSURED** agrees to provide Underwriters with such information, assistance and cooperation as Underwriters reasonably request, and further agree that they will not take any action which in any way increases Underwriters' exposure for liability under this Policy. The **INSURED** also agrees, upon Underwriters' request, to meet with Underwriters' representatives for the purpose of investigation and/or defense, submit to an examination and interrogation by a representative of Underwriters, give a written statement to Underwriters' representatives, under oath if required, and attend hearings, depositions, and trials and shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, in the conduct of suits, all without charge to Underwriters. The **INSURED** shall further cooperate with Underwriters and do whatever is necessary, including authorizing claims, actions, or proceedings in the **INSURED'S** name against others, to secure and effect any rights of indemnity, contribution or apportionment which the **INSURED** may have. The **INSURED** shall not demand or agree to arbitration of any **CLAIM** made against the **INSURED** without the prior written consent of Underwriters thereto, which consent shall not be unreasonably withheld.

**F.     ACTION AGAINST UNDERWRITERS**

No action shall lie against Underwriters unless, as a condition precedent thereto, the **INSURED** shall have fully complied with all the terms, conditions and provisions of the Policy, nor until the amount of the **INSURED'S** obligation to pay shall have been finally determined either by judgment against the **INSURED** after actual trial or by written agreement of the **INSURED**, the claimant, and Underwriters.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy only to the extent of the available insurance afforded by this Policy. Nothing contained in this Policy shall give any person or organization any right to join Underwriters as a co-defendant in any action against the **INSURED** to determine the **INSURED'S** liability except as provided by law.

**G.     ENTITY AUTHORIZATION CLAUSE**

By acceptance of this Policy, the **NAMED INSURED** agrees to act on behalf of all **INSUREDS** with respect to the giving and receiving of notice of **CLAIM** or cancellation, the payment of premiums and the receiving of any return premiums that may become due under this Policy, and the **INSUREDS** agree that the **NAMED INSURED** shall act on their behalf.

**H.     TERRITORY**

This Policy only applies to **CLAIMS** made against the **INSUREDS** in the United States of America, its territories or possessions, or Canada.

**I.     ASSIGNMENT**

This Policy and any and all rights hereunder are not assignable unless the written consent of Underwriters is endorsed hereon.

### J.    CONFORMITY TO STATUTE

Any provisions of this Policy that are in conflict with the statutes of the state wherein this Policy is issued are hereby amended to conform to such statutes.

### K.    CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person acting on behalf of Underwriters shall not effect a waiver or a change in any part of this Policy or estop Underwriters from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed, except by endorsement issued to form part of this Policy.

### L.    ENTIRE AGREEMENT

The **INSUREDS** agree that this Policy, including the application and any materials submitted therewith, the Declarations and any written endorsements attached to and forming part of this Policy, constitute the entire agreement between the **INSUREDS** and Underwriters or any of its agents relating to this insurance.

### M.    FALSE OR FRAUDULENT CLAIM

If an **INSURED** shall fraudulently proffer any **CLAIM** with respect to the amount thereof or otherwise, this Policy shall become void and all coverage hereunder shall be forfeited.

## DIRECTORS, OFFICERS AND COMPANY
## LIABILITY COVERAGE PART

**THIS COVERAGE PART IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. DEFENSE COSTS REDUCE AND MAY EXHAUST THE COVERAGE LIMITS, AND ARE SUBJECT TO THE APPLICABLE RETENTION.**

### I.    INSURING AGREEMENTS

A.    Underwriters shall pay on behalf of the **INSURED PERSONS LOSS** resulting from any **CLAIM** first made against the **INSURED PERSONS** during the **POLICY PERIOD** for a **WRONGFUL ACT** and reported to Underwriters in accordance with Section VI.A. of the Policy, except and to the extent the **COMPANY** is required or permitted to indemnify the **INSURED PERSON(S)** for such **LOSS.**

B.    Underwriters shall pay on behalf of the **COMPANY LOSS** which the **COMPANY** is required or permitted to pay as indemnification to any **INSURED PERSONS** from any **CLAIM** first made against the **INSURED PERSONS** during the **POLICY PERIOD** for a **WRONGFUL ACT** and reported to Underwriters in accordance with Section VI.A. of the Policy.

C.    Underwriters shall pay on behalf of the **COMPANY LOSS** resulting from a **CLAIM** first made against the **COMPANY** during the **POLICY PERIOD** for a **WRONGFUL ACT** and reported to Underwriters in accordance with Section VI. of the Policy.

### II.    DEFINITIONS

A.    **"CLAIM"** means (1) a written demand for monetary or non-monetary relief received by an **INSURED**; and (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief received by an **INSURED** which is

commenced by service of suit, or the return of an indictment (in the case of a criminal proceeding), and any appeal from such proceeding.

**B.**     **"EMPLOYEE"** means:

1.     any past, present or future full-time, part-time, seasonal or temporary employee of the **COMPANY**, but solely while acting within the scope of their duties as such;

2.     an **INDEPENDENT CONTRACTOR**, or any person leased to the **COMPANY,** but solely while acting within the scope of their duties as such, and if the **COMPANY** indemnifies the **INDEPENDENT CONTRACTOR** or leased person in the same manner as the **COMPANY'S EMPLOYEES** described in paragraph (1); and

3.     a volunteer, whose labor and service is engaged and directed by the **COMPANY**, but solely while that person is acting in their capacity as such.

**C.**     "**INSURED**" means the "**COMPANY**" and any **"INSURED PERSON"**.

**D.**     **"INSURED PERSON"** means 1) any past, present or future directors, officers, partners, or **EMPLOYEES** of the **COMPANY** while acting within the scope of their duties as such; and 2) the executors, heirs, legal representatives or assigns of each **INSURED** otherwise insured herein in the event of his or her death, incompetency, insolvency or bankruptcy.

**E.**     **"INDEPENDENT CONTRACTOR"** means any natural person working pursuant to a written contract or agreement between it and the **COMPANY** whose services are designated by the **COMPANY.**

F.     **"LOSS"** means monetary damages, settlements, judgments and statutory attorneys' fees awarded which the **INSURED** is legally obligated to pay in response to a covered **CLAIM**, punitive or exemplary damages or the multiplied portion of a multiplied damages award where insurable under the applicable law, pre-judgment and post-judgment interest on a judgment covered by the terms of this Policy, and **DEFENSE COSTS**. **LOSS** shall not include:

> 1.     amounts paid or incurred by the **INSUREDS** to comply with a judgment or settlement for non-monetary or injunctive relief;

> 2.     criminal or civil fines or penalties imposed by law;

> 3.     taxes;

> 4.     matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

G.     **"WRONGFUL ACT"** means any actual or alleged act, error or omission, including misstatement, misleading statement, neglect or breach of duty committed by: (1) an **INSURED PERSON** solely in his or her capacity as such on behalf of the **COMPANY**; or (2) the **COMPANY**.

H.     **"CRIMINAL PROPERTY"** means property which constitutes a benefit obtained from or as a result of or in connection with **CRIMINAL CONDUCT** or represents such a benefit (in whole or part and whether directly or indirectly) which the **INSURED** (or any person or entity acting on their behalf) knows or suspects or reasonably should have known or suspected that it constitutes or represents such a benefit.

I.     **"MONEY LAUNDERING"** means:

> 1.     the concealment, or disguise, or conversion, or transfer, or removal of **CRIMINAL PROPERTY** (including concealing or disguising its nature, source, location, disposition, movement or ownership or any rights relating thereto); or

2.      the entering into or becoming in any way concerned in an arrangement which is known or suspected to facilitate (by whatever means) the acquisition, retention, use or control of **CRIMINAL PROPERTY** by or on behalf of another person; or

3.      the acquisition, use or possession of **CRIMINAL PROPERTY**; or

4.      any act which constitutes an attempt, conspiracy or incitement to commit any act or acts mentioned in the foregoing paragraphs (i), (ii) or (iii); or

5.      any act which constitutes aiding, abetting, counseling or procuring the commission of any act or acts mentioned in the foregoing paragraphs 1., 2. or 3.

## III.    **EXCLUSIONS**

A.      Exclusions Applicable to All Insuring Clauses

This Policy does not apply to **LOSS** in connection with any **CLAIM**:

1.      that results in a judgment or final adjudication that an **INSURED** has gained any profit or financial advantage or improper or illegal remuneration to which the **INSURED** is not legally entitled;

2.      that results in a judgment or final adjudication that any **INSURED** has committed any criminal, dishonest, intentionally malicious, deliberate, or any willful violation of law or fraudulent act, error or omission.

In determining the applicability of Exclusions 1. and 2., knowledge possessed by the **COMPANY** or any **WRONGFUL ACT** committed by any of the **INSURED PERSONS** shall not be imputed to any other **INSURED PERSON**; provided, however, that knowledge possessed by an **INSURED PERSON** who is a past or current Chairman of the Board, Chief

Executive Officer, President or Chief Financial Officer of the **COMPANY** shall be imputed to the **COMPANY**.

    3.      based upon or directly or indirectly arising out of or resulting from any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease, or death, including but not limited to loss of consortium or services, or any actual or alleged damage to or loss of or destruction of any tangible property, including loss of use thereof; or for libel, slander, oral or written publication of defamatory material or violation of any right of privacy;

    4.      brought by or on behalf of any **INSURED**; provided, however, that this Exclusion shall not apply to:

        (a)      any **CLAIM** brought by an **INSURED PERSON** that is in the form of a cross claim, or a third-party claim for contribution or indemnity which is part of, and results directly from a **CLAIM** which is not otherwise excluded by the terms of this Policy; or

        (b)      any **CLAIM** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or similar official for the **COMPANY** or any assignee of such trustee, examiner, receiver or similar official;

    5.      brought by any past or present shareholder or stockholder who had or has direct or indirect ownership of or control of 20% or more of the voting shares or rights of the **COMPANY**;

    6.      for any actual or alleged activities of an **INSURED** in a fiduciary capacity with respect to any employee benefit or pension plan of the **COMPANY**, or based upon the Employee Retirement Income Security Act of 1974, any and all amendments thereto, any rule, regulation, or order issued pursuant thereto, or any similar provisions of any other federal, state or local statutory law or common law;

7.      based upon or directly or indirectly arising out of or resulting from or in consequence of any actual or alleged: (a) violation of any civil rights laws, (b) discrimination, harassment, retaliation, wrongful discharge, termination or any other employment-related act against an **INSURED,** or (c) any employment-related claim brought against an **INSURED;**

8.      for:

(a)      any actual or alleged seepage, pollution or contamination of any kind, including but not limited to the storage, transportation, treatment, discharge, dispersal, release, emission or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic materials, chemicals, radon, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon land, the atmosphere or any watercourse or body of water, or otherwise, or

(b)      any regulation, order, direction or request that the **INSURED** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any of the foregoing;

9.      based upon or directly or indirectly arising out of or resulting from or in any way involving the rendering of or failure to render professional services;

10.      brought against any of the **INSURED PERSONS** of any **SUBSIDIARY** or against any **SUBSIDIARY** alleging, based upon, arising out of, or resulting from or in any way involving any **WRONGFUL ACT** actually or allegedly committed or attempted by a **SUBSIDIARY** or **INSURED PERSONS**:

(a)      before the date such entity become a **SUBSIDIARY** or after the date such entity ceased to be a **SUBSIDIARY**; or

(b)      occurring while such entity was a **SUBSIDIARY** which, together with a **WRONGFUL ACT** occurring before the date such entity became a **SUBSIDIARY**, would constitute **INTERRELATED WRONGFUL ACTS**;

11.     for any actual or alleged use, exposure, presence, existence, detection, removal, elimination or avoidance of asbestos, or any actual or alleged asbestos-related injury or damages;

12.     to the extent that there is coverage under any other existing valid policy or policies, whether such other insurance is stated to be contributory, excess, contingent or otherwise and regardless of whether or not such **LOSS** is collectible or recoverable under such other insurance; provided, however, that this exclusion shall not apply to any **LOSS** in excess of the retention and limit of liability of such other policy or policies where such **CLAIM** is otherwise covered under the terms of this Policy;

13.     for any actual or alleged **MONEY LAUNDERING** or any actual or alleged act which is in breach of and/or constitutes an offence under any money laundering legislation (or any provisions and/or rules or regulations made by any regulatory body or authority thereunder); however, this exclusion will not apply to **DEFENSE COSTS;**

14.     alleging, arising out of, based upon or attributable to any actual or alleged act, error or omission of any **INSURED PERSON** serving in any capacity other than for the **COMPANY**;

15.     alleging, arising out of, based upon or attributable to any public offering of securities by the **COMPANY** or alleging the purchase or sale of such securities subsequent to such offering including any actual or alleged violation of the Securities Act of 1933 or the Securities Exchange Act of 1934, and rules or regulations adopted thereunder.

**B.**     Exclusions Applicable to Only Insuring Clause I.C.

This Policy does not apply to **LOSS** in connection with any **CLAIM**:

1.      based upon or directly or indirectly arising out of or resulting from or in consequence of any actual or alleged liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an **INSURED**, unless such **INSURED** would have been liable in the absence of the subject contract or agreement;

2.      based upon or directly or indirectly arising out of or resulting from or in consequence of any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, title, slogan, patent, trademark, trade dress, service mark or service name or any other proprietary or licensing rights or intellectual property of any products, technologies or services;

3.      based upon or directly or indirectly arising out of or resulting from any actual or alleged violation of any law, whether statutory, regulatory or common law, with respect to the following activities:  anti-trust, business competition, unfair trade practices or tortuous interference in another's business or contractual relationships.

## SECURITY ENDORSEMENT

To be attached to and form part of Policy Number: **SUAWSD50147-2001**

In favor of: **U-DRIVE ACCEPTANCE CORP**

SECURITY:

    **100.00%**    **Lloyd's of London.  Syndicate breakdown as follows:**

    70.0%       MKL 3000
    30.0%       AUL 1274

    **100.00%**    **Total**


The effective date of this endorsement is January 29, 2020.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Lloyd's Security 2019
WS SEC 1 (04-01-2019)

J1-WS

## SMALL ADDITIONAL OR RETURN PREMIUMS CLAUSE (U.S.A.)

To be attached to and form part of Policy Number: **SUAWSD50147-2001**

## In favor of: **U-DRIVE ACCEPTANCE CORP**

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this Insurance is written, it is understood and agreed that whenever an additional or return premium of \$2 or less becomes due from or to the Insured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Insured will be waived or the return of such premium to the Insured will not be made, as the case may be.

The effective date of this endorsement is <u>January 29, 2020.</u>

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

J2   NMA1168

## MOLD EXCLUSION ENDORSEMENT

To be attached to and form part of Policy Number: **SUAWSD50147-2001**

In favor of: **U-DRIVE ACCEPTANCE CORP**

In consideration of the premium charged, it is hereby understood and agreed that this policy excludes any claim and/or claims expenses directly or indirectly relating to the actual, potential, alleged or threatened presence of any mold, mildew, fungi, spores or other similar organisms.

The effective date of this endorsement is <u>January 29, 2020.</u>

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.


J6    MOLD EXCLU 1

## SEVERAL LIABILITY NOTICE

To be attached to and form part of Policy Number: **SUAWSD50147-2001**

In favor of: **U-DRIVE ACCEPTANCE CORP**

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

The effective date of this endorsement is <u>January 29, 2020.</u>

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

J7    LSW 1001 (Insurance)

**CLAIM NOTIFICATION CLAUSE (U.S.A.)**
**(Approved by Lloyd's Underwriters' Non-Marine Association)**

To be attached to and form part of Policy Number:  **SUAWSD50147-2001**

In favor of: **U-DRIVE ACCEPTANCE CORP**

The Insured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate advice thereof to the Underwriters through

> Mr. John K. Silk
> Karbal, Cohen, Economou, Silk & Dunne, LLC
> 150 South Wacker Drive, 17th Floor
> Chicago, IL 60606

to assess the loss on behalf of Underwriters.

The effective date of this endorsement is January 29, 2020.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

14/12/44

J8    N.M.A. 358

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

To be attached to and form part of Policy Number: **SUAWSD50147-2001**

In favor of: **U-DRIVE ACCEPTANCE CORP**

1.    Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

    1.1    war, invasion, acts of foreign enemies, hostilities, or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

    1.2    any act of terrorism.

2.    For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, idealogical, or similar purposes including the intention to influence any government and/or to put the public or any section of the public, in fear.

3.    This endorsement also excludes loss, damage, costs or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to (1.) and/or (2.) above.

4.    If the Underwriters allege that by any reason of this exclusion, any loss, damage, cost and expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

5.    In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

The effective Date of this endorsement is:  January 29, 2020.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

08/10/2001
J9     NMA2918

## U.S. Terrorism Risk Insurance Act of 2002 as amended
## Not Purchased Clause

To be attached to and form part of Policy Number:  **SUAWSD50147-2001**

In favor of: **U-DRIVE ACCEPTANCE CORP**

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

The effective Date of this endorsement is:  January 29, 2020.

LMA5219
12 January 2015

J10

## APPLICABLE LAW (U.S.A.)

To be attached to and form part of Policy Number: **SUAWSD50147-2001**

In favor of: **U-DRIVE ACCEPTANCE CORP**

This Insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (U.S.A.)

The effective date of this endorsement is <u>January 29, 2020.</u>

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

14/09/2005
Form approved by Lloyd's Market Association

J13    LMA5021

## NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)

To be attached to and form part of Policy Number: **SUAWSD50147-2001**

In favor of: **U-DRIVE ACCEPTANCE CORP**

**For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:**

> Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability), not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.     Under any Liability Coverage, to injury, sickness, disease, death or destruction:
(a) with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.    Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.   Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of,

an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled,

used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured

of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.    As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

The effective date of this endorsement is January 29, 2020.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

17/3/60
J14    NMA1256

To be attached to and form part of Policy Number: **SUAWSD50147-2001**

In favor of: **U-DRIVE ACCEPTANCE CORP**

It is understood and agreed that the following endorsement below replaces Item 7 of the Insurance Jacket Certificate Provisions SLC-3:

## PREMIUM CANCELLATION SCHEDULE

Notwithstanding anything to the contrary contained herein and in consideration of the premium for which this Insurance is written it is agreed that in the event of cancellation thereof by the **Insured** the Earned Premium shall be computed as follows:

## SHORT RATE CANCELLATION TABLE

A. For insurances written for one year:

| Days Insurance in Force | | Percent of One Year Premium | Days Insurance in Force | | Percent of One Year Premium |
|---|---|---|---|---|---|
| 1 - 73 | ................................. | 30 | 206 - 209 | ................................. | 66 |
| 74 - 76 | ................................. | 31 | 210 - 214 | (7 months) ................... | 67 |
| 77 - 80 | ................................. | 32 | 215 - 218 | ................................. | 68 |
| 81 - 83 | ................................. | 33 | 219 - 223 | ................................. | 69 |
| 84 - 87 | ................................. | 34 | 224 - 228 | ................................. | 70 |
| 88 - 91 | (3 months) ................. | 35 | 229 - 232 | ................................. | 71 |
| 92 - 94 | ................................. | 36 | 233 - 237 | ................................. | 72 |
| 95 - 98 | ................................. | 37 | 238 - 241 | ................................. | 73 |
| 99 - 102 | ................................. | 38 | 242 - 246 | (8 months) ................... | 74 |
| 103 - 105 | ................................. | 39 | 247 - 250 | ................................. | 75 |
| 106 - 109 | ................................. | 40 | 251 - 255 | ................................. | 76 |
| 110 - 113 | ................................. | 41 | 256 - 260 | ................................. | 77 |
| 114 - 116 | ................................. | 42 | 261 - 264 | ................................. | 78 |
| 117 - 120 | ................................. | 43 | 265 - 269 | ................................. | 79 |
| 121 - 124 | (4 months) ................. | 44 | 270 - 273 | (9 months) ................... | 80 |
| 125 - 127 | ................................. | 45 | 274 - 278 | ................................. | 81 |
| 128 - 131 | ................................. | 46 | 279 - 282 | ................................. | 82 |
| 132 - 135 | ................................. | 47 | 283 - 287 | ................................. | 83 |
| 136 - 138 | ................................. | 48 | 288 - 291 | ................................. | 84 |
| 139 - 142 | ................................. | 49 | 292 - 296 | ................................. | 85 |
| 143 - 146 | ................................. | 50 | 297 - 301 | ................................. | 86 |
| 147 - 149 | ................................. | 51 | 302 - 305 | (10 months)................... | 87 |
| 150 - 153 | (5 months) ................. | 52 | 306 - 310 | ................................. | 88 |
| 154 - 156 | ................................. | 53 | 311 - 314 | ................................. | 89 |
| 157 - 160 | ................................. | 54 | 315 - 319 | ................................. | 90 |
| 161 - 164 | ................................. | 55 | 320 - 323 | ................................. | 91 |
| 165 - 167 | ................................. | 56 | 324 - 328 | ................................. | 92 |
| 168 - 171 | ................................. | 57 | 329 - 332 | ................................. | 93 |
| 172 - 175 | ................................. | 58 | 333 - 337 | (11 months)................... | 94 |
| 176 - 178 | ................................. | 59 | 338 - 342 | ................................. | 95 |
| 179 - 182 | (6 months) ................. | 60 | 343 - 346 | ................................. | 96 |

| 183 - 187 | ................................... | 61 | 347 - 351 | ................................... | 97 |
| 188 - 191 | ................................... | 62 | 352 - 355 | ................................... | 98 |
| 192 - 196 | ................................... | 63 | 356 - 360 | ................................... | 99 |
| 197 - 200 | ................................... | 64 | 361 - 365 | (12 months)................... | 100 |
| 201 - 205 | ................................... | 65 | | | |

B.   For Insurances written for more or less than one year:

    1.  If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

    2.  If insurance has been in force for more than 12 months:

        (a)  Determine full annual premium as for an insurance written for a term of one year.

        (b)  Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata Earned Premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

        (c)  Add premium produced in accordance with items (a) and (b) to obtain Earned Premium during full period insurance has been in force.

Furthermore and notwithstanding the foregoing, Underwriters shall retain the total premium for this Certificate, such total premium to be deemed earned upon inception of the Certificate if any **Claim** or **Circumstance** is reported to Underwriters under this Certificate on or before such date of cancellation.

The effective Date of this endorsement is:  January 29, 2020.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

J15     PCS 1

## RETROACTIVE DATE EXCLUSION

To be attached to and form part of Policy Number: **SUAWSD50147-2001**

In favor of: **U-DRIVE ACCEPTANCE CORP**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the following exclusion is added to the Exclusions in Section IV of the General Terms and Provisions of this Policy and applies to all Coverage Parts.

### IV.    EXCLUSIONS

This Policy shall not apply to **LOSS** in connection with any **CLAIM**:

Involving any **WRONGFUL ACT** committed or alleged to have been committed prior to the Retroactive Date stated in Item 6 of the Declarations.

The effective date of this endorsement is <u>January 29, 2020.</u>

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

J18

## CONFORMITY CLAUSE

To be attached to and form part of Policy Number: **SUAWSD50147-2001**

In favor of: **U-DRIVE ACCEPTANCE CORP**

It is understood that wherever the term "Assured" is used in this policy or policy jacket, it shall be deemed to have the same meaning as "Insured".

This endorsement is effective as of: January 29, 2020.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

J87

**ML**

## MANAGEMENT LIABILITY INSURANCE

## APPLICATION FORM

### INTRODUCTION

The purpose of this application form is for us to find out who you are and to obtain information relevant to the cover provided by the ML policy. Completion of this application form does not oblige either party to enter into a contract of insurance.

Insurance is a contract of utmost good faith. This means that the information you provide in this application form must be complete, accurate and not misleading. It also means that you must tell us about all facts and matters which may be relevant to our consideration of your proposal for insurance. Any failure by you in this regard may entitle us to treat this insurance as if it never existed. If a contract of insurance is agreed between you and us this application form will form the basis of the contract.

Important: Insuring clauses 1, 2, 3 and 4 (SECTIONS A and B only) provide cover on a claims made and reported basis. Under these insuring clauses, a claim must be first made against the Insured and notified to us during the period of the policy and a claim will not be covered if it arises out of any prior or pending litigation before the Prior and Pending Date.

### HOW TO COMPLETE THIS FORM

Whoever fills out the form must be a director of the applicant company and should make all the necessary enquiries of their fellow directors, officers and employees to enable all the questions to be answered.

If you require any extra space to complete the answers to questions contained within this application form please continue your response in the Additional Information section at the back of the form. Once you have completed the form please return it directly to your insurance broker.

### SECTION 1: COMPANY DETAILS

1.1 Please provide the following details:

| | |
|---|---|
| Insured company: U-Drive Acceptance Corp | |
| Address: 1119 4th St, Ste 102 | |
| City: Sioux City | State: IA |
| ZIP Code: 51101 | Primary SIC Code: |
| *Year of establishment: 2013 | Website: www.udriveac.com |

*if less than 12 months old, please supply a copy of your business plan

1.2 Please state the legal status of the company (tick as appropriate):

Corporation: ✔          Partnership: ☐          Sole Proprietorship: ☐

LLC: ☐          Other: ☐

If other, please provide details:

1.3  Is the company listed on any stock exchange or other securities market?  ☐ Yes  ☑ No

If yes, does the company file the statutory File 20-f to the Securities and Exchange Commission?  ☐ Yes  ☐ No

*If you have ticked the shaded boxes above, please explain in the box below and continue on the ADDITIONAL INFORMATION page if necessary. Please also provide a copy of the completed statutory File20-f if applicable:*

1.4  Please describe below the nature of your business activities (including your subsidiaries):

> U-Drive Acceptance Corporation is a sub-prime lenders for several auto dealers. They purchase the retail finance agreements from the dealers at a ▬ discount. The loans are subject to U-Drive underwriting guidelines. Currently, U-Drive has 2000 loans for a total portfolio of ▬ . They are writing 45-50 new loans each month and expect to grow the portfolio by ▬ ▬ this year.

1.5  Please state the number of employees and business locations:

*Please continue on the ADDITIONAL INFORMATION page if necessary:*

| Location: | ZIP Code: | Number of exempt employees | Number of non-exempt employees |
|---|---|---|---|
| Main location: | 51101 | 14 | |
| Location 2: | | | |
| Location 3: | | | |
| Location 4: | | | |

1.6  Please advise the:

a)  Number of shares issued:

b)  Number of shareholders:

c)  Name and percentage of shares owned by shareholders owning more than 10% of all voting rights (both direct and indirect):  `100`

| Name: | Percentage ownership: | Represented on the board: |
|---|---|---|
| Brian Berkenpas | 90 % | ☑ Yes  ☐ No |
| Jeremy Bennett | 10 % | ☑ Yes  ☐ No |
| | % | ☐ Yes  ☐ No |
| | % | ☐ Yes  ☐ No |
| | % | ☐ Yes  ☐ No |

1.7  Please confirm:

a)  Your gross revenue for the last completed financial year:  ▮▮▮▮▮▮

b)  You achieved a profit for the last completed financial year:  ☑ Yes  ☐ No

c)  Your total assets for the last completed financial year:  ▮▮▮▮▮▮

d)  You have a positive net worth for the last completed financial year:  ☑ Yes  ☐ No

1.8  Have you in the past 3 years, or do you during the next 12 months, have plans to:

a)  Sell the company?  ☐ Yes  ☑ No

b)  Be involved in any mergers, acquisitions or divestments?  ☐ Yes  ☑ No

c)  Change your capital structure?  ☐ Yes  ☑ No

d)  Raise any new equity capital?  ☐ Yes  ☑ No

*If you have ticked any of the shaded boxes in questions 1.7 – 1.8, please explain in the box below and continue on the ADDITIONAL INFORMATION page if necessary:*

> The same partners owned Big Deal Auto, a used auto sales lot, in the past - it was closed in 2018.

## SECTION 2: EMPLOYMENT PRACTICES LIABILITY

*Only complete this section if you require employment practices liability cover*

2.1  Do you have a human resources department:  ☑ Yes  ☐ No

a)  If yes, how many employees are in this department?

> 1

b)  If no, how is this function handled?

2.2  Are your employees issued with an employee handbook?  ☐ Yes  ☑ No
*If yes, please provide a copy*

2.3  Do you have written management guidelines for the following:

a)  Disciplinary procedures?  ☑ Yes  ☐ No

b)  Termination of employment?  ☑ Yes  ☐ No

c)  Preventing discrimination?  ☑ Yes  ☐ No

d)  Preventing harassment?  ☑ Yes  ☐ No

e)  Any complaint of discrimination or harassment?  ☑ Yes  ☐ No

f) Grievance procedures? ☑ Yes ☐ No

g) Compliance with (i) the Americans with Disabilities Act 1990,
as amended, (ii) The Civil Rights Act 1964, as amended and
(iii) the Family and Medical and Leave Act, as amended? ☑ Yes ☐ No

2.4 Do you provide anti-discrimination and anti-harassment training for all of
your employees? ☑ Yes ☐ No

*If no, please explain why:*

2.5 Do you have written procedures for any complaint of discrimination or harassment
from any person who is not an employee of the company? ☑ Yes ☐ No

*If no, please explain why:*

2.6 Do the areas of your premises which are accessible to the public comply with
the Americans with Disabilities Act 1990, as amended? ☑ Yes ☐ No

*If no, please explain why:*

2.7 Are your wage and hour practises compliant with the Fair Labour Standards Act (FLSA)? ☑ Yes ☐ No

*If no, please explain why:*

2.8  Do you periodically compare an employee's job description against their actual duties?      ☑ Yes   ☐ No

*If no, please explain why:*

2.9  How long do you keep records of all hours worked by non-exempt employees?     | 3 years |

2.10 a) How often do you review your wage and hour practises?     | Annually |

  b) Do you obtain legal advice when your wage and hour practises are reviewed?      ☐ Yes   ☑ No

*If no, please explain why:*

| We rely on our HR person and they would contact an attorney if necessary. |

2.11 In the past 24 months has there been or, in the next 12 months is it anticipated there will be, any reduction in force or systematic lay-off?      ☐ Yes   ☑ No

*If yes, please provide full details:*

## SECTION 3: FIDUCIARY LIABILITY

*Only complete this section if you require fiduciary liability cover*

3.1  Please state the total asset size of all your benefit plans:     | Aprox ████ |

3.2  Please complete the following information for your three largest plans to be covered:

| Name of Plan: | Plan assets: | Type of Plan (i.e. defined contributions or defined benefits, welfare benefit, profit sharing etc): |
|---|---|---|
| Invesco | ████ | Simple IRA |

*Please forward the latest financial statement and a copy of the most recently filed Form 5500 (and attachments) for your largest benefit plan.*

3.3 Are the benefit plans funded in accordance with the actuary's recommendation? ☑ Yes ☐ No

3.4 Do all of the benefit plans conform to the standard of eligibility, participation, vesting and other provisions of the Employee Retirement Income Security Act of 1974, as amended? ☑ Yes ☐ No

3.5 Are the company and employee contributions fully and promptly paid into the benefit plans? ☑ Yes ☐ No

3.6 Are the benefit plan assets held independently of the company? ☑ Yes ☐ No

3.7 Is there currently, or is it anticipated that there will be, a suspension or reduction in contributions to any benefit plan? ☐ Yes ☑ No

3.8 Is any benefit plan currently, or anticipated to be, terminated, suspended, merged or dissolved? ☐ Yes ☑ No

3.9 Has any plan merged with, or assumed the responsibilities of, another benefit plan in the last 3 years? ☐ Yes ☑ No

*If you have ticked any of the shaded boxes in questions 3.3 – 3.9, please explain in the box below and continue on the ADDITIONAL INFORMATION page if necessary:*

---

## SECTION 4: CYBER AND PRIVACY

*Only complete this section if you require cyber and privacy cover*

4.1 Do you have procedures and protocols in place covering compliance with all applicable privacy regulations? ☑ Yes ☐ No

4.2 Do you have IT security procedures and protocols in place that govern the handling and storage of sensitive information? ☑ Yes ☐ No

4.3 Do you ensure that all sensitive personally identifiable data (including credit and debit card details) is encrypted while standing and during transmission? ☑ Yes ☐ No

4.4 Do you have anti-virus software installed and enabled on all desktops, laptops and servers (excluding database servers) and is it updated on a regular basis? ☑ Yes ☐ No

4.5 Do you also have firewalls installed on all external gateways? ☑ Yes ☐ No

4.6 Do you take regular back-ups (at least weekly) of all critical data and store the same offsite or in a fire-proof safe or can you confirm that your outsourced service provider meets this requirement? ☑ Yes ☐ No

4.7 If you accept payment cards (credit or debit) as a form of payment, are you compliant with the Payment Card Industry (PCI) Data Security Standard? ☑ Yes ☐ No

*If you have ticked any of the shaded boxes in questions 4.1 – 4.7, please explain in the box below and continue in the ADDITIONAL INFORMATION if necessary:*

## SECTION 5: CRIME

*Only complete this section if you require crime cover:*

5.1 Do you have dual control procedures in place for the transfer of assets, funds, investments, disbursements and for the signing of cheques in excess of $2,500?  ☑ Yes  ☐ No

5.2 Are bank statements independently reconciled at least every 30 days by staff who are not authorized to make payments?  ☑ Yes  ☐ No

5.3 Please list all locations containing sums of money in excess of $10,000 and the security at each location:

| Location: | Security: |
|---|---|
| N/A - No cash held | |
| | |
| | |
| | |
| | |

5.4 Does any individual independently control the appointment of suppliers or award contracts?  ☐ Yes  ☑ No

5.5 In the event of an acquisition, are the recommendations arising out of the due diligence process adhered to in full?  ☑ Yes  ☐ No

5.6 Prior to the appointment of finance, accounts and treasury employees, do you obtain written references covering their most recent 3 year employment history?  ☑ Yes  ☐ No

5.7 Are the finance, accounts and treasury department employees required to take two weeks consecutive holiday each year?  ☐ Yes  ☑ No

5.8 Do you investigate any variance in the monthly management reports against the budget forecast?  ☑ Yes  ☐ No

5.9 Are salaries checked by staff not authorized to administer the payroll against personnel records for unusual or excessive payments?  ☑ Yes  ☐ No

5.10 Do you undertake an audit of raw materials, work in progress and stock at least every 6 months?  ☐ Yes  ☑ No

5.11 Do you have procedures in place for the use of passwords for your computer systems and is authorisation automatically withdrawn at cessation of employment?  ☑ Yes  ☐ No

5.12 Do you have internal audits performed?  ☑ Yes  ☐ No

*If you have ticked any of the shaded boxes in the above questions, please explain in the box below and continue on the ADDITIONAL INFORMATION page if necessary:*

## SECTION 6: KIDNAP AND RANSOM

*Only complete this section if you require kidnap and ransom cover*

6.1  Please provide the following information in respect of each planned foreign trip in the coming 12 months by your employees:

| Country of destination: | Number of employees travelling: | Duration of visit: |
|---|---|---|
| N/A | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

*If you have more than 10 trips planned in the coming 12 months, please provide an itinerary*

6.2  Please state any special security precautions taken prior to and during foreign travel:

| N/A |
|---|
| |
| |
| |
| |

## SECTION 7: INSURANCE REQUIREMENTS

7.1  Please provide details of your current Management Liability Insurance or the cover you require if this is the first time you are applying for Management Liability insurance:

| | Limit: | Prior and Pending Date: |
|---|---|---|
| Directors and Officers Liability: | | |
| Employment Practices Liability: | | |
| Fiduciary Liability: | | |
| Cyber and Privacy: | | |
| Crime: | | |
| Kidnap and Ransom: | | |

7.2  When would you like your insurance to start?  [ MM / DD / YY ]

## SECTION 8: CLAIMS EXPERIENCE AND INSURANCE HISTORY

Regarding all of the types of insurance to which this application form relates AFTER FULL ENQUIRY:

a)  are you aware of any circumstances which may give rise to a claim against any of the companies to be insured or their directors, officers or employees, or

b)  have any directors or officers of the companies to be insured, or the companies themselves, been found guilty of any criminal, dishonest or fraudulent activity or been investigated by any regulatory body, or

c)  are you aware of any loss or damage, whether insured or not, that has occurred to any of the companies to be insured within the last 5 years, or

d)  have the companies to be insured, or anyone working for the companies to be insured, experienced any kidnap, extortion, hijack, wrongful detention or a political threat, or

e)  have you ever suffered a loss of data that has resulted in a privacy breach?

With reference to questions a, b, c, d and e above:                    ☐ Yes    ☑ No

If the answer to the above is 'yes' then please attach full details including an explanation of the background of events, the maximum amount involved or claimed, the status of the claims or circumstances and any reserves or payments made by you or by insurers, and the dates of all developments and payments.

## SECTION 9: DECLARATION

- I declare that AFTER FULL ENQUIRY the information provided in this application form is true and complete and that I have not mis-stated or suppressed any material fact.

- I agree that this application form, together with any other material information supplied by me, shall form the basis this contract of insurance.

- I undertake to inform underwriters of any material alteration to these facts occurring before the inception of the Policy.

1-3-20

Signed:                              Full name:  Jeremy Bennett

Position held:  CFO                                  Date:    MM / 월 4/T 9

*Please enclose with this application form your most recent annual financial statements*

2-4-2020

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

**U-DRIVE ACCEPTANCE CORP**

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, as amended ("TRIA"), that you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, **as defined in Section 102(1) of the Act, as amended:** The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Any coverage you purchase for "acts of terrorism" shall expire at 12:00 midnight December 31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates.

YOU SHOULD KNOW THAT COVERAGE PROVIDED BY THIS POLICY FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THIS FORMULA, THE UNITED STATES PAYS 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020; OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURER(S) PROVIDING THE COVERAGE. YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A USD100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS USD100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED USD100 BILLION, YOUR COVERAGE MAY BE REDUCED.

THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

☐    I hereby elect to purchase coverage for acts of terrorism for a prospective premium of **(5% of D&O Premium)**

☒    I hereby elect to have coverage for acts of terrorism excluded from my policy. I understand that I will have no coverage for losses arising from acts of terrorism.

Policyholder/Applicant's Signature

Syndicate on behalf of certain
underwriters at Lloyd's

Jeremy Bennett
Print Name

Policy Number

1-30-2020
Date

LMA9104
12 January 2015