# GROUP EXHIBIT A

Electronically Filed - BOONE - October 25, 2023 - 09:32 AM

## IN THE CIRCUIT COURT OF BOONE COUNTY
## STATE OF MISSOURI

U Drive Acceptance Corporation, Inc.,

      Plaintiff / Counterclaim-Defendant,

v.

Debra Sue Hammons,

      Defendant / Counterclaimant.

Case No. 19BA-CV03413-01
Judge Jeff Harris

### Judgment and Order

This matter is before the Court after a sanctions hearing on September 25, 2023. Defendant/Counterclaimant Debra Sue Hammons ("Hammons") appeared by counsel. Plaintiff/Counterclaim-Defendant U Drive Acceptance Corporation, Inc. ("UDAC") did not appear. This Court granted Hammons's Second Motion for Sanctions and set a hearing for October 23, 2023, for the specific relief and possible damages associated with a potential striking of UDAC's pleadings. The Court, upon review of Hammons's two motions for sanctions, and having considered the arguments of counsel, hereby enters the following Order and Judgment:

### Procedural History

UDAC filed a deficiency action against Hammons on August 18, 2019 after it repossessed and sold her vehicle. Hammons answered and counterclaimed on May 26, 2020, alleging UDAC violated the Uniform Commercial Code ("UCC") by sending pre-sale notices and post-sale notices that were not compliant with § 9-601 to 9-629 of the UCC as adopted by each state. On September 18, 2020, Hammons amended her counterclaim to add class allegations for UDAC's purported UCC violations. This Court granted class certification on August 15, 2021.

1

Electronically Filed - BOONE - October 25, 2023 - 09:32 AM

On November 13, 2020, Hammons served discovery on UDAC in the form of interrogatories ("ROGs") and requests for production ("RFPs"). UDAC responded to the discovery on January 15, 2021, but failed to produce relevant documents to Hammons's RFPs, specifically UDAC's insurance policies and coverage letters and any related correspondence from UDAC's insurers. Additionally, UDAC claimed to produce documents responsive to ROGs 2–7; 9; 10; 12; 27; 28; 31–40, which requested information necessary to calculate statutory damages and ascertain class members, but did not.

Hammons filed her First Motion to Compel on May 18, 2021. On June 1, 2021, UDAC was ordered to produce the relevant insurance policies and correspondence under a protective order. On April 2, 2022, this Court granted Hammons's motion to approve and direct class notice, ordering UDAC to furnish Hammons with information held by UDAC necessary to ascertain class members within 45 days of the Order.

UDAC failed to comply with this April 2022 Order, so on July 21, 2022, Hammons filed a Motion to Enforce Court Order. The parties resolved this dispute on October 25, 2022, and UDAC produced a list containing 835 accounts that fit the certified class definition. This Court affirmed the class list consisted of 835 accounts and on July 21, 2022, ordered Hammons to proceed with delivering class notice.

In purported compliance with this Court's June 1, 2021 Order, UDAC produced over 800 pages of scrambled documents but only twenty-three related to class members' accounts where damages could be ascertained. Because UDAC had failed to provide Hammons with the documents responsive to her Interrogatories necessary to determine class membership and statutory damages, Hammons served UDAC with her first Notice to Take Deposition of Corporate Representative on May 5, 2023, to be held on May 18, 2023. UDAC failed to attend this deposition.

2

Electronically Filed - BOONE - October 25, 2023 - 09:32 AM

Accordingly, Hammons filed her Second Motion to Compel on June 27, 2023, as well as a Second Notice to Take Deposition, to be held July 13, 2023.

UDAC again failed to attend the second deposition or provide complete discovery responses to Hammons's Interrogatories. Hammons filed her first Motion for Sanctions on July 28, 2023, outlining UDAC's consistent willful disregard of the discovery rules and this Court's Orders. Hammons requested this Court to strike UDAC's pleadings and enter interlocutory default in favor of the Class. A hearing on Hammons's Second Motion to Compel and first Motion for Sanctions was held on August 8, 2023.

At the August 8, 2023 hearing, this Court ordered UDAC to "produce all responsive documents and respond to all outstanding discovery within 30 days of [August 8, 2023], and [] produce the documents in an organized manner and not as a 'document dump.' . . .". The deadline for UDAC to tender its production and discovery responses was September 7, 2023, and UDAC again failed to meet this deadline. Accordingly, on September 18, 2023, Hammons filed her Second Motion for Sanctions, again outlining UDAC's persistent pattern of repeated disregard of the obligation to comply with the rules of discovery and orders of this Court, again requesting this Court to strike UDAC's pleadings and enter interlocutory default in favor of the Class.

A hearing on Hammons's Second Motion for Sanctions was held on September 25, 2023. Hammons appeared through counsel, and UDAC failed to appear. After review of the Motion and discussion with class counsel, this Court granted Hammons's Second Motion for Sanctions. This Court set a hearing on October 23, 2023, to determine the specific relief for the Second Motion for Sanctions and for hearing on possible damages associated with a potential striking of UDAC's pleadings.

3

Electronically Filed - BOONE - October 25, 2023 - 09:32 AM

## Legal Standard

"A trial court has broad discretion in administering the rules of discovery and in determining the proper remedy—including sanctions—for a party's non-compliance with the rules of discovery." *Frontenac Bank v. GB Invs., LLC*, 528 S.W.3d 381 (Mo. App. 2017). "Rule 61.01 gives a trial court significant discretion to impose sanctions that are 'just' when a party fails to answer interrogatories, gives an evasive or incomplete answer to interrogatories, fails to produce documents, or fails to attend depositions." *Id.* "The rule expressly contemplates that a trial court may, in its discretion, sanction a party for such misconduct by striking pleadings, limiting the party's ability to present evidence or otherwise participate at trial, entering a default judgment against the disobedient party, and requiring the disobedient party to pay the reasonable expenses incurred by the other party in pursuing discovery." *Holms v. Wells Fargo Home Mortg., Inc.*, 514 S.W.3d 590, 596–97. (Mo. banc 2017).

"Circuit courts have broad discretion in controlling discovery, including the choice of sanctions for non-disclosure of discovery." *City of Columbia v. Spectra Commc'ns Group LLC*, 652 S.W.3d 356, 366 (Mo. App. E.D. 2022). A trial court does not abuse its discretion by striking a party's pleadings when "(1) the party engaged in a pattern of repeated disregard of the obligation to comply with discovery rules, 'i.e., the party has demonstrated a contumacious and deliberate disregard for authority of the trial court;' and (2) the other party was prejudiced." *Id.*

If both parties are aware of the consequences of failure to comply with the court's order calling for responses to unanswered discovery, it is within the trial court's discretion to strike the non-compliant party's pleadings and enter judgment against the disobedient party. *Hoodenpyle v. Schneider Bailey, Inc.*, 748 S.W.2d 683, 685–86 (Mo. App. W.D. 1988) (entering default judgment against the defendant after defendant consistently disobeyed court orders regarding discovery

Electronically Filed - BOONE - October 25, 2023 - 09:32 AM

responses after notice of potential sanctions); *see also Dobbs v. Dobbs Tire & Auto Centers, Inc.*, 969 S.W.2d 894, 896; 898–99 (Mo. App. E.D. 1998) (affirming the trial court's entry of default judgment in contempt against the corporation and striking of the corporation's pleadings and counterclaim after corporation failed to appear for depositions and repeatedly disregarded the rules of discovery); *City of Columbia*, S652 S.W.3d at 366–67 (affirming the trial court's sanction in striking party's pleadings related to damages and prohibiting party from presenting evidence at damages hearing after party's consistent disregard of discovery rules and trial court's order).

### Sanctions

UDAC has consistently disregarded both the rules of discovery and this Court's orders, resulting in the granting of Hammons's Second Motion for Sanctions. UDAC was aware of the potential for sanctions and continued to fail to produce the requested documents necessary for Hammons to ascertain class membership and calculate statutory damages for the Class. UDAC's ~~continuance~~ *CONTINUED* delay in discovery production has stymied the progress of this litigation and caused immense injustice to Class Members who suffered directly because of UDAC's inactions. This Court hereby strikes UDAC's pleadings and enters judgment against UDAC. As such, all allegations in Hammons's counterclaim are deemed admitted by UDAC. *See* Rule 55.09.

The amount of UCC damages for each class member can be determined by taking figures from the class members' loan agreements and inserting them into the statutory formula provided by § 400.9-625(c)(2): the "finance charge" plus 10% of the amount financed yields each class member's statutory damages. For example, the TILA box in Hammons's RISC shows:

| FEDERAL TRUTH IN LENDING DISCLOSURES | | | | |
|---|---|---|---|---|
| ANNUAL PERCENTAGE RATE THE COST OF YOUR CREDIT AS A YEARLY RATE. | FINANCE CHARGE THE DOLLAR AMOUNT THE CREDIT WILL COST YOU. | AMOUNT FINANCED THE AMOUNT OF CREDIT PROVIDED TO YOU OR ON YOUR BEHALF. | TOTAL OF PAYMENTS THE AMOUNT YOU WILL HAVE PAID AFTER YOU HAVE MADE ALL PAYMENTS AS SCHEDULED. | TOTAL SALE PRICE THE TOTAL COST OF YOUR PURCHASE ON CREDIT, INCLUDING YOUR DOWN PAYMENT OF $ 500.00 IS |
| 22.00 % | $ 3,268.00 | $ 6,560.00 | $ 9,828.00 | $ 10,328.00 |
| YOUR PAYMENT SCHEDULE WILL BE: | | | | |

Electronically Filed - BOONE - October 25, 2023 - 09:32 AM

So, Hammons's statutory damages under § 400.9-625(c)(2) would equal: $3,924.00:

- The finance charge of $3,268.00; plus

- 10% of the amount financed ($6,560.00) = $656.00.

Because UDAC has failed to produce the documents it possesses containing the TILA boxes from class members' secured transaction with UDAC—information necessary to determine these class members' statutory damages—this Court calculated the Class's damages based on the available information UDAC has produced. UDAC's production contained the above-mentioned information for twenty-three class members. Applying the statutory formula found in § 400.625(c)(2) (and UCC § 9-625(c)(2) as adopted by other states), the average amount of damages for this sample is $8,534.20. When extrapolated for the Class, which consists of 835 accounts, this Court awards statutory damages to the Class in the amount of $7,126,057.00 ($8,534.20 x 835). These statutory damages compensate the Class for the actual damages suffered, including: loss of use of tangible property and cost of alternative transportation; loss resulting from the inability to obtain, or increased costs of, alternative financing; harm to credit worthiness, credit standing, credit capacity, character, and general reputation; harm caused by defamation, slander, and libel; harm caused by invasion of privacy; and other uncertain and hard-to-quantify actual damages.

The Court grants Class Counsel the right to pursue collecting this Judgment, in full or in parts, against any available insurer or broker or other potentially responsible third party in any amount Class Counsel and Hammons deem advisable, but in no event an amount greater than $7,126,057.00 unless further ordered by this Court.

Further, this Court grants the Class injunctive relief in the form of credit repair, where UDAC shall request the four major credit reporting agencies (TransUnion, Equifax, Experian, and Innovis) to remove the repossession-related tradeline from each class member's credit report. Per

Electronically Filed - BOONE - October 25, 2023 - 09:32 AM

affidavit from Hammons's expert, this injunctive relief provides a benefit to each class member in the amount of at least $10,000. Accordingly, this Court grants injunctive relief to the Class in the form of the removal of the repossession tradeline from each class members' credit report. If UDAC fails to send necessary documentation to delete class members' tradelines within 90 days of this Order, class counsel is granted power of attorney to file the necessary documentation to delete class member's tradelines, on UDAC's behalf.

Finally, this Court finds UDAC is barred from collecting or recovering any alleged deficiency balances from Hammons and each class member. Hammons and each class member are responsible for any tax obligations or consequences that might arise from this Order and Judgment, including any federal, state, and local income taxes that may be due on any payments made to them and any other benefits they receive under the Order and Judgment, including benefits related to writing off any alleged deficiency balances from the Class. However, UDAC shall not issue an IRS Form 1099 to any member of the Class related to the elimination of deficiency balances. The original amount and enforceability of the alleged deficiency balances outstanding on each Class Member's account was disputed in good faith. As a result of this good-faith dispute and the Court's independent judicial findings, the Court finds the alleged deficiency balances never accrued. *Cent. Tr. Bank v. Branch,* 651 S.W.3d 826, 830 (Mo. banc 2022) ("A lender's right to a deficiency judgment accrues only if there is strict compliance with statutory requirements.")

## JUDGMENT

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. Judgment is entered against UDAC as sanctions.

Electronically Filed - BOONE - October 25, 2023 - 09:32 AM

2. The Class is awarded $7,126,057.00 in statutory damages and injunctive relief worth at least $8,350,000 for barring UDAC from collecting class members' alleged deficiency balances and deleting their tradelines.

3. UDAC must send the necessary documentation to delete the class members' tradelines within ninety days after the date of this Order, otherwise class counsel is granted power of attorney to file the necessary documentation to delete class member's tradelines, on UDAC's behalf.

4. UDAC is barred from collecting or recovering any alleged deficiency amounts from Hammons and each class member.

5. UDAC must not issue IRS Form 1099 to members of the Class.

6. Hammons's counsel will submit a motion for attorney's fees and costs, Class Representative award, and plan for distribution of monies collected with the Court within thirty days after the date of this Order.

**IT IS SO ORDERED.**

Date  11-8-23

Judge Jeff Harris

**IN THE CIRCUIT COURT OF BOONE COUNTY
STATE OF MISSOURI**

U Drive Acceptance Corporation, Inc.,

      Plaintiff / Counterclaim-Defendant,

v.                          Case No. 19BA-CV03413-01

Debra Sue Hammons,

      Defendant / Counterclaimant.

## Order Approving Award of Attorney's Fees, Expenses, and Incentive Payment to Class Representative

This matter is before the Court after a hearing on Defendant/Counterclaimant's Amended Application for Attorney Fees, Expenses, and Incentive Payment to Class Representative on November 27, 2023. Defendant/Counterclaimant Debra Sue Hammons ("Class Representative") appeared by counsel. Plaintiff/Counterclaim-Defendant U Drive Acceptance Corporation, Inc. ("UDAC") did not appear. This Court, upon review of Class Representative's Application for Attorney Fees, Expenses, and Incentive Payment to Class Representative (the "Application"); Class Representative's Amended Application for Attorney Fees, Expenses, and Incentive Payment to Class Representative (the "Amended Application"); and having considered the arguments of counsel, hereby grants the Amended Application and enters the following Order:

### Procedural History

On October 25, 2023, this Court entered judgment against UDAC and in favor of the Class. The Court awarded the Class $7,126,057 in damages; barred UDAC from collecting class members' alleged deficiency balances (conservatively estimated to be at least $5,000,000); and required UDAC to send the necessary documentation to delete the class members' tradelines from

1

their credit reports—injunctive relief worth at least $8,350,000—for a total estimated class benefit over $20 million.

On November 16, 2023, Class Representative filed her Application, requesting attorney's fees, costs, and a Class Representative incentive award. A hearing was held on November 20, 2023 on Class Representative's Application. Class Representative appeared by counsel. UDAC failed to appear. After discussion with the Court, Class Representative indicated she intended to file her Amended Application. On November 22, 2023, Class Representative filed her Amended Application, requesting an award of 50% of any monies collected for attorney's fees; $20,000 for reimbursement of litigation costs and expenses; reimbursement of any costs out of money collected going forward, and a $10,000 incentive award to the Class Representative. This Court heard Class Representative's Amended Application on November 27, 2023.

## Legal Standard

A trial court's award of attorney's fees is given "great deference . . . because the trial court is considered an expert at awarding attorney's fees, and may do so at its discretion." *Bachman v. A.G. Edwards, Inc.*, 344 S.W.3d 260, 267 (Mo. App. E.D. 2011) (internal quotes and alterations omitted). This discretion will "not be reversed unless the amount awarded is arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration." *Realty Res., Inc. v. True Docugraphics, Inc.*, 312 S.W.3d 393, 400 (Mo. App. E.D. 2010).

Although not exhaustive, trial courts may consider the following factors to determine whether the requested fees are reasonable: (1) the benefit conferred on the Class Members, (2) the complexity of the issues, (3) the case duration, (4) the risks to which Class Counsel were exposed, (5) the experience, reputation, and skill of the attorneys, (6) awards in similar cases, and (7)

2

reaction of the Class. *Bachman*, 344 S.W.3d at 267. These factors all weigh in favor of finding the requested fee award reasonable.

### Attorney's Fees & Expenses

The fees and expenses awarded in *Bachman* and approved by the appellate court confirm the requested fees and expenses are fair and reasonable. *Bachman* involved a settlement of a class action against A.G. Edwards for breach of fiduciary duty and unjust enrichment. 344 S.W.3d at 263. After four years of litigating the case, the parties settled where:

> A.G. Edwards agreed to pay $26,000,000 in cash and to issue $34,000,000 in vouchers. In particular, under the terms of the settlement: the subclass of former accounts, approximately 293,820, is entitled to $6,000,000 in cash ($20.42 for each former account); the subclass of current accounts, approximately 1,379,105, is entitled to $34,000,000 in vouchers to offset against certain fees (three vouchers with a total face value of $24.65 for each current account); class counsel will receive up to $21,000,000 cash in attorneys' fees and $600,000 cash in expenses....

*Id.* at 263–65. In *Bachman*, the total benefit being conferred upon the class was $60,000,000, and class counsel requested $21,000,000 in attorney's fees and $600,000 in expenses from the $26,000,000 cash fund. The requested award of attorney's fees in *Bachman* represented 35% of the total benefit conferred upon the class and 84% of the cash benefits. The trial court (the Hon. Angela T. Quigless) approved the requested attorney's fees. *Id.* at 265.

The appellate court affirmed the trial court's award of attorney fees, noting "in the class action context, a one-third contingent fee award is not unreasonable." *Id.* at 267. "The Missouri Supreme Court allowed the [*Bachman*] opinion to stand as authority by denying transfer of the case from the court of appeals. The [*Bachman*] case is, thus, the best evidence of Missouri law." *Washington v. Countrywide Home Loans, Inc.*, 655 F.3d 869, 873 (8th Cir. 2011).

Although *Bachman* approved an award of 35% of the total benefits, if the Class were to collect the full monetary judgment, Class Counsel's Amended Application is for less than 18% of the

3

benefit conferred on the Class (full judgment of 7,125,057 x requested fee of 50% = $3,563,028.50 ÷ total class benefit of $20,476,057 = 17.4%). The percentage of attorney's fees requested here is much lower than the average fee percentage of 31.71% and the median one-third routinely awarded. *Bachman*, 344 S.W.3d at 267.

The fairness and reasonableness of Class Counsel's requested fees is further confirmed by a review of the factors.

*1. The benefit conferred on the class.*

This factor perhaps best substantiates the reasonableness of the requested fee awards. This factor should be weighed more heavily than the others in determining the reasonableness of the award. While the other factors are important and weigh for the requested award, the recovery is of primary importance because that is the true benefit to the class. *Manual for Complex Litigation, Fourth*, § 21.71 at 336 (2004).

~~The results speak for themselves. This is not the typical "coupon" class action, involving a *de minimus* recovery for the members of the class via a settlement agreement that provides class counsel with an exorbitant fee.~~

The deletion of negative credit reporting/tradelines from the Class Members' credit reports regarding the deficiency balances is a very substantial benefit to the Class. It is indisputable this benefit is of great value to the Class. The credit rating not only affects whether a class member can borrow money and at an attractive rate, but it can affect everything from phone and cable hookups, insurance rates, and even employment opportunities. The value of a better credit rating cannot be overstated. Accordingly, this Court found the deletion of tradelines provides a benefit to each class member in the amount of at least $10,000—providing injunctive relief worth at least $8,350,000. *See* October 25, 2023 Judgment.

Class Counsel obtained exceptional results on behalf of the Class in both a monetary judgment and non-monetary benefits. This factor, therefore, weighs heavily for the requested fee award.

2. *The complexity of the issues.*

This lawsuit was not an ordinary consumer lawsuit. The factual and legal issues presented by this class action were novel and complex. These issues include: Missouri class action jurisprudence, insurance coverage, legal sufficiency of presale notices and post-sale explanations under the Uniform Commercial Code ("UCC"), analyzing cases construing prior revisions of the UCC, and the nuanced interplay of the UCC with Chapters 365 (Motor Vehicle Time Sales Law) and 408 (related to Legal Tender and Interest). This factor, therefore, strongly supports the requested fee award.

3. *The duration of the case.*

This lawsuit began on August 18, 2019, which means it has been ongoing for over four years. Class Counsel: (i) extensively briefed motions for Class Representative and the putative Class; (ii) conducted extensive discovery and dealt with significant delays from UDAC; (iii) obtained class certification; and (iv) obtained a judgment providing extraordinary benefits for the Class.

Class Counsel's work is still far from over. Class Counsel will be devoting significant time and advance expenses in carrying out the terms of this judgment and collecting the judgment, including:

- filing the necessary paperwork with the credit reporting agencies to delete each class members' tradeline;
- defending a federal lawsuit filed by one of UDAC's insurers to obtain a declaration as to coverage under its insurance policy with UDAC;
- pursuing additional lawsuits against other UDAC insurers;

5

- pursuing additional lawsuits against UDAC insurance brokers for failure to procure proper insurance coverage;

- conducting intensive discovery to locate UDAC's assets (likely in other states);

- subpoenaing third-party records to assist in discovering assets and insurance policies;

- deposing UDAC's officers and employees to aid in collecting the Judgment;

- levying on UDAC's assets to satisfy the Judgment;

- possibly setting up a receivership to manage UDAC's assets; and

- possibly filing a petition for Involuntary Bankruptcy against UDAC.

Given the time Class Counsel has expended and the significant additional work ahead, the requested fee award is reasonable.

*4. Class Counsel was and remains exposed to significant risks.*

"In assessing this factor, courts consider the defendant's ability to withstand an adverse judgment and the risks of establishing liability at trial." *Cosgrove v. Citizens Auto. Finance, Inc.*, 2011 WL 3740809, *9 (E.D. Pa. 2011). Establishing liability, whether at trial or ultimately on appeal, was not guaranteed. Even though a judgment was obtained, it is unlikely UDAC will pay it. Despite these risks, Class Counsel continues to represent Class Representative and the Class on a contingent fee basis and advance the costs of litigation. This factor weighs for the award. See *id.* (noting that a contingent fee arrangement adds to the risk of nonpayment).

*5. Class Counsel is experienced, skilled and reputable.*

"The skill and efficiency of class counsel is measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the . . . experience and expertise of the counsel, the skill . . . with which counsel prosecuted the case and the performance . . . of opposing counsel." *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, *15 (D.N.J. 2011). Here, Class

Counsel obtained substantial benefits for many consumers. Class Counsel is highly experienced, having successfully litigated other class actions and is actively involved in litigating many other consumer class actions similar to this one. A Missouri trial judge had this to say about Class Counsel in a similar case: "Class Counsel is experienced and highly skilled in class action and consumer litigation with a reputation justifying the fee award. Class Counsel has also submitted high-quality work to the Court throughout the litigation, and they pursued the case vigorously against skilled and experienced opposing counsel." *Vantage Credit Union v. Trimble*, 1011-CV08076 (Mo. Cir. Mar. 22, 2013).

Like *Trimble*, Class Counsel has also submitted high-quality work to the Court throughout this litigation and pursued the case vigorously. "These factors weigh in favor of the award." *Cosgrove*, 2011 WL 3740809 at *9.

    6. *Awards in similar cases.*

"In the absence of a contrary showing, the trial court is presumed to know the character of the [legal] services rendered in duration, zeal, and ability." *Essex Contracting, Inc. v. Jefferson County*, 277 S.W.3d 647, 656 (Mo. banc 2009). "The trial court presumptively [knows] the value of them according to custom, place, and circumstance." *Id.* (quotation omitted). "The trial court is considered to be an expert on the question of attorney fees; the court that tries a case and is acquainted with all the issues involved may fix the amount of attorneys' fees without the aid of evidence." *Id.* (emphasis added). "The setting of such a fee is in the sound discretion of the trial court and should not be reversed unless the amount awarded is arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration." *Id.* at 656–57.

The Amended Application submitted by Class Counsel requests an attorney fee award equal to 50% of the monetary benefits collected and just 17.4% of total benefits.

Although *Bachman* approved an award of 35% of the total benefits and 81% of the monetary benefits, Class Counsel's requested fee award in this case is a substantially lower percentage of both. Class Counsel requests an award of less than 18% of total benefits and only 50% of the monetary benefits, if any is collected. Additionally, this Court provided injunctive relief by authorizing Class Counsel, on UDAC's, behalf to delete negative information for the Class Members' credit reports, which is a "properly considered component[] of the common fund in assessing Class Counsel's percentage fee." *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("[C]ourts should consider the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees.").

The Class includes 835 accounts, so the value of the benefit to their credit reports is estimated to be at least $8,350,000. *See* Pickel Affidavit filed by Class Counsel on October 25, 2023, ¶ 8–11; *see also Jackson v. Mo. Credit Union,* No. 18BA-CV00665, ¶ 12 (Mo. Cir. Mar. 14, 2022) ("MCU has also agreed to submit requests to credit bureaus Experian, Equifax, TransUnion, and Innovis to delete the class members' 'tradelines' associated with their accounts subject to the Settlement. Missouri courts have assigned a 'conservative' value of $10,000 per class member for getting these tradelines removed from their credit reports."); *Universal Credit Acceptance, Inc. v. Myers*, No. 15JE-AC05976-01 (Mo. Cir. Feb. 8, 2021); *Anheuser Busch Employees' Credit Union v. Wells*, Case No. 1522-AC09263-01 (Mo. Cir. July 10, 2018).[1]

---

[1] *Jackson, Myers,* and *Wells* were similar class actions based on the same types of violations (UCC notices) and remedies sought (statutory damages, deletion of negative credit tradelines, and deficiency waivers). In *Wells*, Mr. Pickel estimated the benefit of having the negative auto loan tradeline deleted from the class members' credit reports, using an "ultra-conservative estimate," equated to $10,000 per class member. The courts took the estimated credit benefits of $10,000 per class member into account when it calculated the aggregate benefits conferred to the class. *See, e.g., Myers*, No. 15JE-AC05976-01 at 9 n. 1 ("Using an estimate of $10,000 in benefit conferred to each class member for deleting their tradeline from their credit reports, the Settlement Class also receives a benefit of approximately $77,010,000 ($10,000 per each of the 7,701 identified class members).").

8

The average cash component of the judgment for each of the class member's loans is over $8,000 ($7,126,057 ÷ 835), which far surpasses what is typically recovered in class actions. *See e.g., Bachman*, 344 S.W.3d at 264–65 ($20.42 per class member); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, *10 (N.D. Cal. Aug. 29, 2014) ($20 to $40 per claimant); *Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv-05142-EMC, Dkt. No. 94 (N.D. Cal. Apr. 2, 2012) ($25 merchandise voucher); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn. 2016) ($33.20 per class member); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ($13.75 per class member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($30 per class member); *Wright v. Nationstar Mortgage LLC*, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) ("around $45" per class member); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per class member); *Charvat v. Travel Servs.*, 2015 WL 76901, at *1 (N.D. Ill. Jan. 5, 2015) ($48.37 per class member).

The excellent results obtained here are striking when compared to a 2019 UCC notice class settlement involving GM Financial: *Hartwell v. AmeriCredit Fin. Services, Inc.*, No. 1:18-CV-11895-DJC (D. Mass) (Aug. 28, 2019). In *Hartwell*, the class representative alleged GM Financial violated Massachusetts's version of the UCC because GM Financial's presale notices said the class members' deficiency balances may be reduced by the sale proceeds from the vehicle, but Massachusetts law required GM Financial to reduce the deficiency balance by the "fair market value" of the vehicle, not the sale proceeds. *See Hartwell* Amended Complaint at ¶ 11.

Hartwell's theory of liability was bulletproof. In 2018, the Supreme Court of Massachusetts declared notices like GM Financial's were deficient: "We conclude that the notice that is required by the Uniform Commercial Code is never sufficient where the deficiency is not calculated based on the fair market value of the collateral and the notice fails to accurately describe how the

9

deficiency is calculated." *Williams v. American Honda Fin. Corp.*, 479 Mass. 656, 668 (2018). Despite the strength of Hartwell's case, as part of the court-approved settlement, the average check for the 2,273 class members was approximately $712. *See Hartwell* Settlement Agreement p. 3. And although the *Hartwell* class members had their alleged deficiency balances eliminated (like in this case), the *Hartwell* class members didn't get the benefit of having adverse information removed from their credit reports. *See generally Hartwell* Settlement Agreement.

The benefits Class Counsel obtained for the Class here are exponentially greater than the *Hartwell* Class received—and unlike *Hartwell*, Class Counsel didn't have a state supreme court decision that guaranteed victory. Unlike in *Hartwell*, the Class also received benefits to their credit reports. The credit rating not only affects whether a class member can borrow money (or borrow money at an attractive rate), but it can affect everything from phone and cable hookups, insurance rates, housing options, and even employment opportunities.[2] The benefit to the class member's credit reports cannot be overstated. *Id.*

A recent example of the market rate in St. Louis is shown by the settlement in *St. Louis Reg'l Conv. v. Nat'l Football League*, No. 1722-CC00976 (Mo. Cir) where the St. Louis Regional Convention and Sports Complex Authority, City of St. Louis, and St. Louis County—all sophisticated parties—agreed to a 35% contingency fee for its attorneys on a $790 million settlement.[3] Contingency fees in the 30% to 40% range, and even as high as 50%, are common in Missouri. *See, e.g., Lowe v. Mercy Clinic E. Communities*, No. ED108826, 2021 WL 5313015, at *1 (Mo. App. Nov. 16, 2021) (40% contingent-fee); *Selleck v. Keith M. Evans Ins., Inc.*, 535

---

[2] *See, e.g.*, https://consumer.ftc.gov/articles/0070-credit-your-consumer-rights; https://consumer.ftc.gov/articles/credit-scores; https://consumer.ftc.gov/articles/understanding-your-credit.
[3] *See* https://www.ksdk.com/article/news/local/business-journal/governments-negotiate-share-790m-rams-settlement-official-says/63-dca48682-8255-40d5a15a-e94d79e2be7a/.

S.W.3d 779, 783 (Mo. App. E.D. 2017) ("the trial court ruled that 33 1/3% was a reasonable and standard contingent-fee percentage in the local legal community"); *In re Farris*, 472 S.W.3d 549, 551 (Mo. banc 2015) (40% contingent-fee); *Hervey v. Missouri Dep't of Corr.*, 379 S.W.3d 156, 165 (Mo. banc 2012) (50% contingent-fee); *Tobin v. Jerry*, 243 S.W.3d 437, 439 (Mo. App. E.D. 2007) (33.33%–40% contingent-fee); *Dominion Home Owners Ass'n v. Martin*, 953 S.W.2d 178, 182 (Mo. App. W.D. 1997) (40% contingent fee but no abuse of discretion where trial court awarded more than 40%); *International Materials v. Sun Corp.*, 824 S.W.2d 890, 891–92 (Mo. banc 1992) (contingent-fee agreements with varying percentages of 40%, 45%, and 50%).

This is common elsewhere, too. *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) ("Plaintiffs request for approval of Class Counsel's 33% fee falls within the range of the private marketplace, where contingency-fee arrangements are often between 30 and 40 percent of any recovery"); *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 201 (N.D. Ill. 2018) ("a typical contingency agreement in this circuit might range from 33% to 40% of recovery"); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021) ("Courts nationwide have repeatedly awarded fees of 30 percent or higher in so-called 'megafund' settlements."); *see also Trey Cox, Alternative Fee Arrangements: Partnering with Clients through Legal Risk Sharing*, 56 THE ADVOCATE (TEXAS) 20 (2011) ("Pure contingency fees, which are usually negotiated at approximately 40%, can be useful structures in cases where the plaintiff is seeking monetary or monetizable damages. They are also often appropriate when the client is an individual, start up, or corporation with limited resources to finance its litigation. Even large clients, however, appreciate the budget certainty and risk-sharing inherent in a contingent fee arrangement.").

Class Counsel's customary contingency fee agreement, and their fee agreement with the Class Representative, is in line with these examples above, the market rate in Missouri, and elsewhere. It provides for attorney's fees equal to 40% of the benefits conferred on the client, including money, elimination of deficiencies, and deletion of negative information from credit reports if secured before trial and 50% thereafter. The contingency fee agreement here is also like those used by both sophisticated and unsophisticated clients in the market.

The contingent fee class counsel proposes for taking this case in lieu of working less risky cases on an hourly basis is a 50% fee based on the monetary benefits (17.4% of the total benefit reflected in the judgment). *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1241 (D. Kan. 2015) ("[C]lass actions typically involve a contingent fee arrangement because it insulates the class from the risk of incurring legal fees and shifts that risk to counsel . . . The contingent fee nature of the representation . . . supports the requested award [because it] shifts the risk of loss from plaintiff to plaintiff's counsel."). This explains why the Court of Appeals noted, "in the class action context, a one-third contingent fee award is not unreasonable," and approved the 35% of the total benefits (81% of the monetary benefits) as the fee award there. *Bachman*, 344 S.W.3d at 267. Class Counsel's requested award of less than 18% of the total benefits is made even more reasonable considering Class Counsel needs to allocate significant time and advance expenses to collect the judgment.

The award requested here is less than the award in *Bachman*, 344 S.W.3d at 267 (citing *In re Rite Aid Corp. Secs. Litig.*, 146 F.Supp.2d 706, 735 (E.D. Pa. 2001) (noting that in a study of 289 settlements ranging from under $1 million to $50 million, the average attorney's fees percentage is 31.71%, and the median is one-third); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (no abuse of discretion in awarding 36% of $3.5 million recovery to class counsel)); *see*

12

*also Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (noting "courts have frequently awarded attorneys' fees ranging up to 36% in class actions;" and holding "[a]lthough 38% is on the high end of the typical range, we cannot say that it is unreasonable when compared to other awards within this circuit."). Class Counsel's request is well below the range often approved when considering it amounts to 17.4% of the total benefits conferred on the class and is aligned with the 35% award approved in *Bachman* when just considering the cash and debt relief. *Bachman*, 344 S.W.3d at 267.

This factor weighs for finding the requested fee award reasonable.

7. *Reaction of class members.*

Class Notice went out on December 20, 2022, to inform the Class of the pending class action and to inform members the deadline to exclude themselves or opt-out of the Class was February 3, 2023. No member of the Class has excluded themselves or opted out. This factor supports the requested fee award.

This Court finds the seven *Bachman* factors weigh in favor of Class Counsel's requested award. Accordingly, the Court awards Class Counsel 50% of any monies collected for attorney's fees. Additionally, Class Counsel is awarded $20,000 for reimbursement of litigation costs and expenses accrued already during the four years of litigating this lawsuit. The Court also awards Class Counsel reimbursement of any future costs out of money collected going forward, and retains jurisdiction over this matter for collection and distribution purposes.

### Class Representative Award

Finally, the Court approves an incentive award of $10,000 to Class Representative. The Class Representative stayed involved at every step of the litigation and the settlement negotiations:

> The interests of the Class, such as here, are better served when they are presented
> by vigilant, competent and independent class representatives who actively monitor

13

> class counsel and the conduct of the litigation. Moreover, where lawyers are rewarded for their risk and efforts on behalf of a class, but class representatives are not, there is little incentive for class representatives to serve as active client participants in the litigation, thus negating the "adequate representation" safeguard....

*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185, 1221–22 (S.D. Fla. 2006). Class Representative has been representing, working for, and expending some of her own money for the class since this litigation started. She was deposed, has maintained consistent contact and communication with Class Counsel, and has taken time out of her personal life to attend to the needs of this case. *McDonough v. Toys R Us, Inc.*, 2011 WL 6425116, *17 (E.D. Pa. 2011) (approving incentive award, noting that plaintiffs "kept informed of the litigation and communicated with class counsel as necessary to assist with the effective prosecution of the case"); *Manual for Complex Litigation*, §21.62 n.971 (4th ed. 2004) (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery"). The requested incentive award is entirely fair and reasonable. *In re Dun & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (two named plaintiffs received $55,000 and three named plaintiffs received $35,000). *Cf. Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) (finding that requested incentive award of $100,000 was excessive based on actual time spent on case, and instead awarding $50,000).

## JUDGMENT

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. Class Counsel is awarded 50% of any monies collected for attorney's fees;

2. Class Counsel is awarded $20,000 for reimbursement of litigation costs and expenses;

3. Class Counsel is awarded reimbursement of any future costs out of money collected going forward;

14

4. Class Representative is awarded $10,000 as an incentive award; and

5. This Court retains jurisdiction over this matter for collection and distribution purposes.

**IT IS SO ORDERED.**

Date  11-30-23

Judge Jeff Harris

15